## WASHINGTON COUNTY v. WELD COUNTY.
## LOGAN COUNTY v. WELD COUNTY.

1. NEW COUNTIES — RIGHTS AND LIABILITIES.— In the absence of restrictive constitutional or statutory provision, a new county carved from an existing county receives none of the assets and assumes none of the burdens of the parent county.

2. The word "property" in a statute, there being no language to show a contrary legislative intent, may fairly include money as well as other assets.

3. COUNTIES — DIVISION — RIGHTS OF NEW COUNTY IN SURPLUS FUNDS. The constitution requires that each new county, on its establishment, shall be made responsible for a ratable proportion of the "then existing liabilities of the county or counties from which such new county shall be formed." Two counties were carved out of an old one, under acts providing for the enforcement of this mandate, and that "all county records and other property" theretofore belonging to the old county should remain its property. They further provided for a tribunal to adjust and settle all matters of revenue proper to be done on account of the formation of the new county, and to apportion the indebtedness of the old county. *Held*, that the new counties were not entitled to any part of the surplus funds of the old county.

*Error to District Court of Weld County.*

IN the spring of 1887 the sixth general assembly passed two acts creating the counties of Washington and Logan, respectively, by carving territory therefor out of the county of Weld. Each of these acts contained a provision to the effect that "the present indebtedness" of Weld county should be apportioned between the new counties "in proportion to the ratio which the taxable

property of that portion of Weld county" included in each "bears to the taxable property of Weld county as shown by the assessment rolls for the year 1886."

It appears that at the time of these divisions Weld county had no indebtedness, but, on the contrary, that there was a surplus of $60,000 in the treasury. Each of the new counties made demand through the proper officials for a share of the $60,000 in proportion to the ratio of its taxable property, as specified in relation to indebtedness by the statutory provision referred to. The commissioners of Weld county refused to comply with these demands, whereupon the present actions were brought by the counties of Washington and Logan, respectively, against the county of Weld. Demurrers were interposed to the complaints filed, and in each case judgment was rendered by the court sustaining the demurrer and dismissing the complaint. To review these judgments the present writs of error were sued out.

Messrs. MARKHAM & DILLON, C. A. BENNETT and E. A. CLARK, for plaintiffs in error.

Messrs. J. W. McCREERY and H. N. HAYNES, for defendants in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

In the absence of a restrictive constitutional or statutory provision on the subject, when a new county is created by segregating a portion of the territory belonging to an existing county, the old county retains all assets previously owned by it, including rights of action, funds and other personal property; also all real estate held in proprietary right, save such, if any, as may be within the territory taken away; it likewise remains bound by its existing contracts, and is subjected to the burden of discharging all existing obligations and liabilities. The new county receives none of the assets, and assumes

none of the burdens. Cooley, Tax'n, 176, note 2; *Laramie Co. v. Albany Co.* 92 U. S. 307; *Mount Pleasant v. Beckwith,* 100 U. S. 514.

The reasons for the foregoing doctrine are that the title to all property and ownership of all assets are vested in the old county as a corporate entity, this entity being in no way disturbed by the division of its territory and separation from it of a portion thereof; while, on the other hand, all existing obligations and liabilities were incurred in its corporate capacity and name. Therefore, while the legislature has power to divest title and apportion property as well as indebtedness, yet if such power be not exercised, there does not follow, as a legal sequence, either a transfer of the assets or liabilities to the new county. Creditors will not be heard to complain, because, in the *first* place, the legislature has plenary authority to divide counties; *secondly,* the claims of creditors are exclusively, as above suggested, against the old corporation; and, *thirdly,* they have no specific lien upon the property, real or personal, assigned to the new county, by the act of separation.

The constitution of Colorado contains a provision requiring that each new county, upon the establishment thereof, shall be made responsible for a ratable proportion of the "then existing liabilities of the county or counties from which such new county shall be formed." But that instrument is wholly silent as to the distribution of the assets belonging to the old corporation. This matter is therefore governed by the doctrine above announced, unless provision otherwise be made by the general assembly when creating new counties; and, if the legislative acts before us do not clearly abrogate this common-law rule, Weld county may retain the surplus funds shown by the pleadings to be in its treasury. The legislature may not have contemplated the possible existence of a surplus fund; if this were known to be the fact, it is obvious that there would be no room for con-

struction. But we shall assume that the converse may be true, and proceed, as counsel have done, to examine the provisions relied on by the respective parties.

Each of the statutes under consideration embraces a section providing for the enforcement of the foregoing constitutional mandate, but there is no provision specifically commanding a distribution of surplus funds. On the contrary, by section 9 of the act creating Logan county, and section 6 of the act creating Washington county, it is provided that "all county records or other property" theretofore belonging to the county of Weld "shall be and remain the property of said county of Weld." The word "property," in its broad signification, includes everything that may be the subject of ownership. We discover no controlling reason for saying that this word, as used in the provision before us, should not cover funds in the treasury of Weld county. It may fairly, in the absence of statutory language showing a contrary legislative intent, be held to include money as well as other assets. *People v. Ingersoll,* 58 N. Y. 1.

But counsel for plaintiffs in error contend, not only that the usual and ordinary signification of the word "property" precludes such an inference, but also that section 11 of the act creating Logan county, and section 9 of the act creating Washington county, clearly evince a legislative purpose contrary thereto. These sections are substantially identical in meaning, and are the only remaining provisions of the act which can be invoked to aid counsel's contention that the legislature intended to authorize a ratable distribution of the municipal funds on hand. They provide for a tribunal which is clothed with authority "to adjust and settle all matters of revenue proper to be done on account of the formation of the new county, * * * and also to apportion the indebtedness of said county of Weld." Counsel insist that the phrases referring to the adjustment and settlement

of matters of revenue clearly include, among other things, the equitable apportionment of the surplus funds.

But, in the *first* place, it will be noticed that there are no words that can be regarded as expressly granting to the new counties a right to share in the moneys on hand; *secondly*, that no basis for such apportionment is specifically named; yet, in the absence of provision in the premises, it may be doubtful if the intent to distribute the funds, admitting that such intent is shown, could be carried out. Because the legislature adopted a certain basis for the distribution of indebtedness, it does not necessarily follow that this body intended to apply the same method to the apportionment of surplus funds. We do not, however, think that the language under consideration necessarily refers to such funds, or to their distribution. There may be other matters pertaining to valuations, assessments, rates, the collection of delinquent taxes, and the like, that would become proper subjects for consideration by the two boards of county commissioners acting conjointly. If the legislature had intended to apportion the surplus funds, it would hardly have left such intention to be inferred from the language adopted. That body would doubtless, as in the division of school districts, have expressed its will so plainly as to exclude all uncertainty. We cannot accept the construction urged upon us by plaintiffs in error.

There seems to be force in counsel's suggestion that since the people living within the new counties contributed to the surplus fund in the treasury of Weld, equitably the new counties should have a ratable proportion thereof. But many other circumstances necessarily demand investigation by the legislature in creating new counties; and we must presume that, if that body actually thought of a possible surplus, other considerations were sufficient to overcome the supposed equity. Changes such as these " often present matters for adjustment involving questions of great delicacy and difficulty." In

some cases they result in greater hardship to the new county than to the old, while in other cases the converse is true. The courts cannot say, and it is not their province to consider, what reasons operate to control the legislative action in a particular case. *Laramie Co. v. Albany Co., supra.*

The judgments in the two cases at bar will be affirmed.

*Affirmed.*