BOARD CO. COM'RS CHEYENNE CO. v. BOARD CO. COM'RS BENT CO.

BOARD CO. COM'RS LINCOLN CO. v. SAME.

BOARD CO. COM'RS KIOWA CO. v. SAME.

1. CREATION OF NEW COUNTIES AND APPORTIONMENT OF INDEBTEDNESS.— Where new counties are created out of a county having a debt, under an act providing that the commissioners of the new and of the old counties "shall have full power and authority to adjust and settle all matters of revenue proper to be done on account of the formation of said counties, and also to apportion the indebtedness of said counties," the new counties are liable for their share of the existing debt, without making any deduction on account of cash in the treasury of the old county, or of unpaid taxes due to it.

2. LIABILITY OF NEW COUNTIES FOR DEBTS NOT DUE.— In such case the existing indebtedness of the old county being imposed by the legislature as a burden upon all the counties concerned, each new county is liable *in præsenti* to the old county for its share of the debt, though part of it is not due.

3. Error to Require the Payment of a Greater Rate of Interest than Statutory Rate.—Under act March 22, 1889, fixing the rate of interest, in the absence of special agreement, at eight per cent., a judgment fixing the rate of interest in such case at ten per cent. is erroneous.

*Appeal from District Court of Bent County.*

These three cases were consolidated for the purposes of the argument in this court, and will be disposed of together. The cases, which are numbered respectively 2,618, 2,619, 2,640 here, were tried below upon an agreed statement of facts, and involve the same questions of law.

The controversies arose over the adjustment of certain matters of revenue between the counties of Cheyenne, Lincoln, and Kiowa, appellants, and the county of Bent, appellee, consequent upon the creation by the seventh general assembly of the former, in part, out of the territory up to that time included in the latter. The counties of Prowers and Otero, also formed out of the county of Bent at the same legislative session, do not appear to be in any way interested in the present controversy.

The agreed statement of facts in cause No. 2,619, in so far as the same is material to the present controversy, is, in substance, as follows:

*First.* It appears from the assessment roll of said Bent county for the year 1888, that the taxable property of said county for said year amounts to the sum of $7,800,149.

*Second.* The value of taxable property in said county of Bent included within the boundaries of the present county of Kiowa for said year is $1,244,381.

*Third.* The value of taxable property in said county of Bent included within the present county of Lincoln for said year is $402,692.

*Fourth.* The value of taxable property in said county of Bent included within the present boundaries of the county of Cheyenne for said year is $1,390,838.

*Fifth.* The books and accounts of the county of Bent show the total gross indebtedness or liabilities of Bent

county on the 13th day of April, 1889, to be the sum of $131,403.96, and that said total amount includes certain items the validity of which as a charge against said defendants is controverted by the above-named defendants. At this point these controverted claims are set forth, and numbered respectively from 1 to 7.

The claims above numbered 3, 4 and 5 being now in suit in the district court of Bent county, Colo., in three certain actions therein pending, entitled " *The Atchison, Topeka & Santa Fe Railroad Company v. The Board of County Commissioners of Bent County;* " " *The Prairie Cattle Company v. The Board of County Commissioners of Bent County;* " and " *J. C. Coad v. The Board of County Commissioners of Bent County,*" — all of which said actions are being defended by said Bent county; and the files in said causes may be referred to and are made a part of this stipulation for the purpose of enabling the court to determine whether said claims legally constituted part of the indebtedness or liabilities of said Bent county on said April 13, 1889.

*Sixth.*   That on the 13th day of April, 1889, the cash in the hands of the county treasurer of Bent county to the credit of the several funds amounted to the sum of $22,705.67.

*Seventh.*   That on the 13th day of April, 1889, there was due to said Bent county delinquent and unpaid taxes for the year 1887, amounting to the gross sum of $7,270.66, and for the year 1888 taxes amounting to the gross sum of $35,297.96.

*Eighth.*   And it is further stipulated and agreed that the 13th day of April, 1889, shall be taken as the date of the settlement or apportionment between the county of Bent and all of the three above defendant counties.

*Ninth.*   The defendants above named conceded the correctness of the amount of the gross indebtedness or liabilities of Bent county as above specified on the 13th day of April, 1889, with the exception of the items hereinbefore numbered respectively 1, 2, 3, 4, 5, 6 and 7, and the plaint-

iff, Bent county, asserts that all said items, controverted as aforesaid by defendant counties, are proper to be estimated in arriving at the total amount of the gross indebtedness of Bent county on said date.

*Tenth.*   The defendant counties above named claim that, in making the apportionment of their proportion of the indebtedness of Bent county, on the date above specified, there should be deducted from the gross amount of the indebtedness of said Bent county (1) the sum of $22,705.67, cash in the hands of the treasurer of said county, and (2) the amount of delinquent taxes due said Bent county on said date, amounting, in the aggregate, to the sum of $42,568.62, which said claim, upon the part of the defendant counties, is controverted by the plaintiff county claiming that said defendant counties are not entitled to any part of the cash in the hands of the treasurer of Bent county on said date, nor to any part of the delinquent taxes due to Bent county on said date.

Upon the statement of facts, and the exhibits mentioned therein, the court made certain findings.  Of these the following were specifically excepted to.

"*Fourth.*   The court further finds that all the cash in the hands of the treasurer of Bent county to the credit of the several county funds on the 13th day of April, 1889, amounting to the sum of $22,705.67, belongs to and is the property of said Bent county, and not subject to apportionment between it and said county of Cheyenne.

"*Fifth.*   That all delinquent taxes unpaid and owing to the said county of Bent on the 13th day of April, 1889, amounting to the sum of $42,568.62, belong to and are the property of said Bent county, and not subject to apportionment between it and said county of Cheyenne."

The court further found that the plaintiff, Bent county, was not entitled to include as part of the liabilities or indebtedness of said county, and to collect from the defendant county, its proportion of the claim specified in subdivisions 1, 2, 3, 4, 6 and 7 of paragraph 5 of said agreed

statement of facts, and disallowed the same, to which said finding and disallowance the plaintiff county, by its attorney, excepted.

And thereupon the court entered judgment in favor of the plaintiff and against the defendant, in accordance with said findings, for the sum of $21,567.31, with interest thereon at ten per cent. per annum from April 13, 1889, and costs of suit. Similar judgments, but varying in amounts, were entered in each of the other cases.

Messrs. A. B. McKinley, W. T. Rogers and M. B. Gerry, for appellants.

Mr. Caldwell Yeaman, for appellees.

Mr. Justice Hayt delivered the opinion of the court.

The district court found that the cash in the hands of the treasurer of Bent county at the date of the creation of the new counties, and the delinquent taxes at that time due Bent county, belonged to, and were the exclusive property of, said county, and judgment was entered accordingly.

Appellants question the correctness of these findings and judgment. They say the new counties are entitled to have deducted from the gross indebtedness of Bent county an equitable share of the cash fund, and a ratable proportion of the delinquent taxes, and that the balance then remaining represents the indebtedness which is to be apportioned under the statute. And the failure of the court below to so decide is the basis of the assignment of error in this court.

In the case of *Washington Co. v. Weld Co.* 12 Colo. 152, it is said: " In the absence of a restrictive constitutional or statutory provision on the subject, when a new county is created by segregating a portion of the territory belonging to an existing county, the old county retains all assets previously owned by it, including rights of action, funds and other personal property; also all real estate held in

proprietary right, save such, if any, as may be within the territory taken away. It likewise remains bound by its existing contracts, and is subject to the burden of discharging all existing obligations and liabilities. The new county receives none of the assets and assumes none of the burdens."

The reasons for these conclusions, as well as the authorities relied upon in support thereof, are given in the opinion. In that case the counties of Washington and Logan had been carved out of the territory formerly included in the county of Weld, and it appeared that at the time of the creation of the new counties there was a surplus fund of $60,000 in the treasury of Weld county. The new counties claimed the right to share in this surplus, which claim was denied. The court, being of the opinion that there was nothing in the constitution nor in the act creating the new counties changing the common-law rule, decided that the new counties were not entitled to any part of the surplus funds of the old county. The correctness of these conclusions is not disputed by appellants, but a distinction between the case then before the court and the present cases is attempted to be made.

Such distinction finds no substantial foundation in any dissimilarity between the statute then under consideration and those now controlling. The statutes are practically the same. And it is not claimed that the constitution has since been changed. The distinction relied upon grows out of the fact that in the former case there was a surplus and no liabilities, and in the present there is both a surplus and liabilities. The argument is that the indebtedness of the old county to be apportioned between it and the new counties is not the sum of $120,955.01, as found by the court below, but this sum less the cash in hand and the amount of the delinquent taxes. We cannot accept this view. The term "indebtedness" has a fixed and well-understood meaning.

"Indebtedness" is defined by Anderson in his Law Dic-

tionary as "the condition of owing money; also the amount owed." "Indebtedness. The state of being in debt, without regard to the ability or inability of the party to pay the same." Bouv. Law Dict. It is unnecessary to multiply authorities to show that "indebtedness" is not synonymous with the term "net wealth," as claimed by counsel. By a familiar canon of construction we are required to presume that the word "indebtedness" is used in the statute in its popular sense. Moreover, in the present instance we have convincing proof that the legislature which created appellant counties had in view the distinction between "indebtedness" and "surplus," from the fact that it was repeatedly called upon to legislate in reference thereto in the creation of the numerous counties brought into existence at the same session. Among the new counties formed by that legislature were Yuma, Morgan, Phillips and Sedgewick. In each of the various acts creating these counties the legislature made specific provision for these very matters, the omission of which from the acts controlling the present controversy is made the more noticeable. The nature of these provisions will be more fully shown later, in connection with the claim for a division of, or a credit for, the delinquent taxes. In the absence of legislative provision therefor, we can see no reason for making a distinction between cash in the treasury when there is an indebtedness and such cash where there is no indebtedness. In either case, the statute being silent, under the decision in *Washington Co. v. Weld Co., supra*, the fund remains the property of the old county. In reference to the equities of the claims of the old and new counties to this fund, judicial opinions are not in harmony. Should it be conceded, however, that the greater equities are in favor of the new counties, the result cannot be changed for this reason. The courts cannot undertake to add provisions not found in the statute for the purpose of preventing an apparent hardship. *Cooke v. School Dist. No. 12*, 12 Colo. 453; *Hampshire v. Franklin*, 16 Mass. 85; *Laramie Co. v. Albany Co.* 92 U. S. 307.

The reasons for disallowing the new counties a share in the surplus fund in the treasury of Bent county apply with reference to the uncollected taxes. Undoubtedly it was competent for the legislature to have given the new counties the taxes previously assessed upon the property within the territory set off to them, but, in the absence of legislation changing the rule, it has been repeatedly held that the old county alone retained the right to the taxes assessed previous to the division. This applies as well to taxes upon property set off to the new county as to those levied upon property remaining within the boundaries of the old county, and, when collected, they will belong to the latter. It is claimed, however, that in the present instance the statute is not silent.

Authority to apportion the delinquent taxes is sought in the following provision of section 10 of the act creating Cheyenne county: "The board of county commissioners of the said counties of Bent, Elbert and Cheyenne shall have full power and authority to adjust and settle all matters of revenue proper to be done on account of the formation of said county of Cheyenne, and also to apportion the indebtedness of said counties of Bent and Elbert, as specified in section nine (9) of this act." And similar provisions are to be found in the acts by which the counties of Lincoln and Kiowa were created.

Should we assume that the legislature intended by these provisions to provide for a division of the delinquent taxes, the act is fatally defective, because no basis for such distribution is provided. A careful consideration of the act in connection with other acts passed at the same time by which other counties were created, leaves no doubt, however, that the authority conferred upon the county commissioners "to adjust and settle all matters of revenue proper to be done" has no reference to the delinquent taxes due Bent county.

In the acts by which the counties of Yuma, Morgan, Phillips and Sedgewick were respectively created, the same

delegation of power to the commissioners to settle all matters of revenue, etc., is to be found. And yet in each of these instances the section conferring such power is immediately preceded by a section providing for the distribution of the cash on hand in the treasury of the old county, and the delinquent taxes thereafter to be collected. In the act creating the county of Phillips out of the county of Logan the section is as follows: " Section 12. All moneys now in the treasury of said county of Logan, and all moneys which may hereafter come into the treasury of said county from the taxes of the year 1888 and previous years, together with all moneys arising from the redemption of lands sold for taxes of the years 1887 and 1888, and bid in by the said county of Logan, and from all other sources of revenue, shall be apportioned between the counties of Phillips and Logan, in proportion to the valuation which the taxable property of that portion of Logan county which is now included within the boundaries of Phillips county bears to the taxable property of Logan county, as shown by the assessment rolls for the years 1887 and 1888."

If the argument of appellants to the effect that the cash on hand and the delinquent taxes are to be apportioned under the provision for the adjustment of revenue is to prevail, it will, in effect, render section 12 in the Phillips county act, and similar sections in other acts, entirely superfluous and idle. To this conclusion we cannot yield our assent. In our opinion the legislature was acting advisedly in these matters, in the belief that section 12 was necessary in cases where a division of the funds and delinquent taxes became proper. We cannot, therefore, disturb the findings and judgment of the district court by which it was determined that the delinquent taxes, as well as the cash in the treasury of Bent county, remained the property of that county after as well as before the division.

The court below entered judgment against appellant counties for their respective proportions of the indebtedness of Bent county, although a portion of this indebtedness had

not at the time matured, and this is assigned for error. There was no error .in this. The debt was fixed by the legislature so far as the new counties are concerned, and a judgment *in præsenti* might properly be entered under.the statute.

In determining the amount of the indebtedness of Bent county for the purposes of the apportionment, the district court disallowed a number of claims filed against Bent county. The rejection of such claims is made the ground of appellee's cross-errors. The majority of these claims did not constitute an indebtedness against Bent county at the time of the taking effect of the act creating the new counties, and were therefore properly rejected; the acts creating the new counties providing only for the apportionment of "the present indebtedness." And as to the claims for excess of taxes paid to Bent county by the Pueblo & Arkansas Valley Railroad Company and others, there is no sufficient *data* before this court upon which the claims can be allowed. It appears that these matters, as well as the claim of J. C. Coad, were at that time in litigation in independent suits, and we are referred to the pleadings in those actions for further information. An examination of these pleadings shows the causes to be at issue for trial, certain facts being alleged upon the one side and denied upon the other. In this state of the record the claims were properly disallowed by the district court.

The only substantial error appearing upon this record is in reference to the rate of interest as fixed by the court below. Under the act of March 22, 1889, which went into effect ninety days thereafter, the rate of interest, unless otherwise agreed, is fixed at eight per cent. per annum. For error in this regard the judgment will be reversed, with directions to the district court to modify the same by fixing the rate of interest in accordance with the statute.

*Reversed.*