| 10 | 181 |
|---|---|
| 25c | 175 |
| 10 | 181 |
| 16 | 380 |
| 29s | 198 |

## [No. 1421.]
## WASON v. MAJOR, COUNTY TREASURER, ET AL.

1. TAXES—ILLEGALITY—COLLECTION—INJUNCTION.

Courts of equity will not enjoin the collection of a tax solely on the ground of its illegality, or the threatened sale of property. It must be shown that not only would the plaintiff be without an adequate remedy at law, but that the enforcement of the tax would produce irreparable injury, or lead to multiplicity of suits, or bring a cloud upon his title.

2. TAX SALE—CLOUD ON TITLE.

A cloud upon title does not arise from a tax sale until the purchaser of the tax title has received and recorded a deed.

3. OFFICE—TITLE TO OFFICE—QUO WARRANTO.

The title to an office can only be attacked by proceedings in *quo warranto* as provided in chapter 27, civil code.

4. TAXES—INJUNCTION.

Before a party is entitled to ask that the collection of part of his tax be enjoined, his complaint should show a tender of the other portion of the tax.

*Appeal from the District Court of Chaffee County.*

Messrs. CARPENTER & McBIRD and Mr. E. F. RICHARDSON, for appellant.

Mr. ALBERT L. MOSES, for appellees.

WILSON, J., delivered the opinion of the court.

The county of Mineral was created by an act of the legislature which was approved March 27, 1893. Plaintiff was the owner of certain lands embraced within the limits of the new county, and formerly belonging to the county of Rio Grande. The authorities of the new county assessed these lands and also other property of plaintiff, and levied a tax thereon for the year 1893. Plaintiff sought to enjoin the collection of this tax, claiming that it was illegal for several reasons: First, that the county of Mineral was never lawfully formed or created by such pretended act, because of a defective description of its boundary lines in the act, and because that after the passage and approval of the act, no vote of the people residing within the territory attempted to be described was ever had or taken to confirm such creation of a county, and no consent had been obtained therefor from the property holders within any of the old counties affected by the formation of the new one. Second, that plaintiff's property was liable to assessment and had been assessed in the county of Rio Grande prior to said 27, day of March, 1893, and that said Rio Grande county was, as he was informed and believed, about taking steps to declare invalid the act of the legislature creating a county out of certain territory claimed to be embraced in the so-called Mineral county; and should such action be taken, and said act be declared to be of no effect and invalid, then and in that event, plaintiff would be compelled to pay the tax upon his said lands and property in the county of Rio Grande. A temporary writ of injunction was issued without notice. Subsequently, defendants appeared, and demurred upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and that the plaintiff had not the legal capacity to maintain a suit for the determination of the matters sought to be raised in the action, as to the legality of the county of Mineral as a county of the state, or as to the constitutionality of the act creating said county. Upon hearing, the demurrer

was sustained. Plaintiff thereupon elected to stand by his complaint, and judgment being rendered in favor of defendants, he appealed therefrom. In the argument of this case, plaintiff did not urge any of the matters set forth as impeaching the regular and lawful formation of the county, but relied strongly upon the second ground of his complaint.

It is well settled that courts of equity will not enjoin the collection of a tax solely on the ground of its illegality, or the threatened sale of property to satisfy it. Additional facts must be alleged and plainly appear, to bring a case within some recognized head of equity jurisdiction. It must be shown that not only would the plaintiff be without an adequate remedy at law, but that the enforcement of the tax would produce irreparable injury, or lead to a multiplicity of suits, or bring a cloud upon his title. The reason of this rule is based upon the familiar principles of equity jurisprudence, and also upon public policy. State, county, and municipal governments can be carried on only from the revenues derived from taxation, and it would certainly be contrary to every principle of public policy to permit their important powers to be impaired, or their machinery wholly stopped, except from very grave and serious cause. As well and forcibly said by the distinguished Judge Cooley, " but the personal consequences are not the only ones which should be kept in view in these cases. When the illegalities complained of affect only the person complaining, an injunction which restrains proceedings as to him may cause no considerable mischief, and may very properly be awarded if a sufficient case is made out; but when they affect the whole tax levy, as they often do, a court should be extremely cautious in awarding on the complaint of one person, or even of several, a process which may reach the cases of others not complaining, and which may seriously embarrass all the operations of the government depending on the source of revenue, which by means of it would be stopped. Courts have frequently remarked upon the impossibility of the government calculating with any certainty upon its revenues, if

the collection of taxes was subject to be arrested in every instance in which a taxpayer or taxcollector could make out *prima facie* a technical case for arresting such action; and it is justly said to be much better to let an individual pay to the government the demands it makes upon him, and if he considers them wholly or in part illegal, apply for the refunding of the money with interest afterwards." Cooley on Taxation, 762.

In *Dows v. City of Chicago*, 11 Wall. 109, in the opinion of the supreme court of the United States, concurred in by every member of the court, it was said: "There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the preventive remedy of injunction can be invoked. It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the tax levy should be interfered with as little as possible. Any delay in the proceedings of the officers upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will therefore allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud upon the title of complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered in the absence of these circumstances, it will be found upon examination that the question of jurisdiction was not raised, or was waived." The doctrine here announced has been since repeatedly affirmed. *Union Pacific Railway Co. v. Cheyenne*, 113 U. S. 526; *Shelton v. Platt*, 139 U. S. 594; *Pacific Express Co. v. Seibert*, 142 U. S. 348.

The case at bar did not come within the rule here laid down. The cloud upon the title, upon which plaintiff's counsel mainly rely, as constituting irreparable injury, and on which they lay the greatest stress in urging their claim for equitable relief, was not shown by the averments of the complaint. In discussing this subject, Judge Cooley says: "If the alleged tax has no semblance of legality: if upon the face of the proceedings it is wholly unwarranted by law or for any reason totally void, so that any person inspecting the record and comparing it with the law is at once apprised of the illegality, the tax, it would seem, could neither constitute an incumbrance nor an apparent defect of title; and therefore in law could constitute no cloud." Cooley on Taxation, 779.

If this be true, equity will not interfere. An assessment made under an unconstitutional law is such a case. *Wells v. Buffalo*, 80 N. Y. 253; *Townsend v. New York*, 77 N. Y. 542.

If the act attempting to create the county of Mineral was unconstitutional, void or inoperative from any cause, an examination of the law would disclose the fact. Likewise, if Rio Grande county had the exclusive right, as claimed, to assess plaintiff's land and collect taxes thereon for the year 1893, this fact would appear upon an inspection of the statutes then in force. This question is authoritatively settled in this jurisdiction by a decision of our own supreme court. In *Morris et al. v. St. Louis National Bank*, 17 Colo. 231, it was held that a cloud upon title did not arise from a tax sale until the purchaser of the tax title had received a deed, and placed the same on record. Under the law then existing, the deed in this case could not have been issued until the lapse of three years from the time of sale. This was certainly ample time within which plaintiff could have fully tested, in proper proceedings, the legality of the county, the constitutionality of the act creating it, and all other matters affecting the assessment and taxation of his property. The threatened injury, therefore, was by no means imminent, and was entirely too uncertain and contingent to be termed

irreparable, within the meaning of the law, even if it be admitted that the acts of defendants were unlawful, and if not checked would finally have resulted in casting a cloud upon plaintiff's title. In order to constitute irreparable injury within the meaning of the law, the threatening of which would justify a court of equity in exercising its extraordinary power of injunction it must clearly appear not only that the wronged party could not be compensated in damages therefor, but also that the injury would follow, if the court did not so interpose. Such a condition of affairs did not exist in this case. On the contrary, if plaintiff had diligently pursued his legal rights, he had ample opportunity to have ousted defendants from their falsely pretended official positions, and estopped them from the exercise of any unlawful authority. He at least should have made this effort before invoking the remedy which he did.

With regard to the plea that the assumption of full jurisdiction by the court and the exercise of its injunctive power would prevent a multiplicity of suits, this seems to us to be of no force. A single suit by plaintiff would have been sufficient to settle the legality of the whole proceedings, and a *lis pendens* notice would have protected him from any injury or damage by reason of an assignment by the county of any of its certificates of purchase, conceding that they might be construed to be a cloud upon his title. On the contrary, to have permitted the course of procedure contended for by plaintiff would have directly favored and encouraged a multiplicity of suits. If the plaintiff was entitled to an injunctive writ upon the grounds alleged in his complaint, then every other property owner in Mineral county would have been entitled to the same writ, and the whole machinery of the county government would have been absolutely stopped for want of revenue.

It is true that in some of the states, notably Illinois, it is held that courts may enjoin the enforcement of a tax when it is void, or levied without authority of law, and plaintiff claims to come within this exception. Even in Illinois,

however, the courts will not exercise their injunctive power solely upon the ground that the case is within one of these exceptions to the general rule. There must also appear additional grounds before this remedy can be invoked. "While we consider it settled that a court of equity will never entertain a bill to restrain the collection of a tax excepting in cases where the tax is unauthorized by law, or where it is assessed upon property not subject to taxation, this court has never held that it would take jurisdiction in such excepted cases without special circumstances showing that the collection of the tax would be likely to produce irreparable injury or cause a multiplicity of suits." *Cook County v. C., B. & Q. R. R. Co.*, 35 Ill. 466. Neither of these conditions which would entitle the court to assume jurisdiction existed in this case, as we have already held.

Another fatal objection is that the permitting of this course of procedure would allow the title to an office to be attacked in a manner other than that expressly and exclusively provided by law. That this cannot be done is now too well settled to require argument or citation of authorities. In order to have sustained the position of plaintiff as to the legality of the county organization, it would have been necessary to hold that the county commissioners and treasurer of Mineral county had usurped and unlawfully held their respective offices. This could only have been inquired into and determined by proceedings in *quo warranto*, as provided in chapter 27 of the code. *Pueblo County v. Gould*, 6 Colo. App. 44.

Plaintiff's contention that prior to March 27, 1893, the time when the act creating Mineral county went into effect, his lands and property had been assessed for the year 1893 by the assessor of Rio Grande county by a valid and legal assessment, can become important or material in only one event. If the act attempting to create the new county was void, it is wholly unnecessary to examine it: if the act was valid, the defense may be weighed. It is however in any event immaterial so far as the lands are concerned, if the

word assessment is used in its restricted sense, that is, meaning thereby an official listing of persons and property, with an estimate of the value of the property of each for the purpose of taxation. If the word is used in its general and more extended sense as implying the completed tax list, that is to say, the names and lists of the persons to be taxed, with the valuations of their property and the taxes set down under their several headings, and properly extended and carried out, then the allegation was not and could not have been true under the statutes then in force. The revenue statute of 1891, which controlled the assessment for 1893, required every person to list his *personal* property "in the county where the same is situated or lying on the first day of January in each year," and every assessor to assess the *personal* property in his county of that date, but nowhere is it required that real estate shall be assessed of any particular date. In the absence of such a provision, it might be questionable as to whether the lien of a county upon lands for taxes would attach until the levy had actually been made, which would not have been prior to October of that year. The statute would seem to imply that there is no lien until after the levy, although we do not so hold, it being unnecessary to the determination of this case. Gen. Stats. sec. 2818. There was certainly no statute which then provided that a simple listing of real estate for taxation gave to a county a lien for the taxes to be subsequently levied thereon. If Rio Grande county then had no lien for taxes upon plaintiff's real estate embraced in Mineral county at the time of its creation, it could acquire none subsequently. The claim for such taxes subsequently assessed against plaintiff's lands was therefore no part of the assets of Rio Grande county at the time when the act creating Mineral county went into effect. The indebtedness consequently did not exist. No taxes were then due for that year, and hence could not be delinquent. When they did become due, there was no statute by which the lien then created could relate back and attach at any particular prior time. It is too clear for argu-

ment that taxes not assessed are no liens, and that the obligation to assess taxes is not a lien upon the property on which it ought to be assessed. *Heine v. The Levee Commissioners*, 19 Wall. 659. Especially is this true in the absence of any statute to the contrary.

Counsel for plaintiff rely strongly in support of their position upon *Com'rs Cheyenne Co. v. Com'rs Bent Co.*, 15 Colo. 320, but it will be readily seen from the views which we have expressed that we do not consider it applicable to the facts of this case.

As has been stated, the law in force at the time of the creation of Mineral county required that personal property should be assessed in the county wherein it was situate on the first day of January of the year for which the assessment was being made. Plaintiff cannot be allowed to claim that his complaint sufficiently stated a cause of action so far as the taxes upon his personal property were concerned, even though it be held insufficient as to the taxes on his real estate, and that hence the demurrer should have been overruled. The action was brought to enjoin the collection of his taxes as a whole,—that is, upon both his personal and real property. Before he would be entitled to ask that the collection of a part of the tax be enjoined, his complaint should show a tender of the other portion of the tax. *People ex rel. v. Henderson*, 12 Colo. 379. The complaint contained no averment of this character, and was in all respects insufficient.

The court did not err in sustaining the demurrer, and its judgment will be affirmed.

*Affirmed.*