## ROBERTSON v. BLAINE COUNTY.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1898.)

### No. 441.

1. LIMITATIONS—ACTION AGAINST COUNTY—LIABILITY OF FORMER COUNTY.

An action against a county to enforce a liability arising from an indebtedness of a former county charged upon the new county by the act creating it is upon a specialty created by the statute. As no liability against the new county could arise from the original obligation alone, such obligation is but an element in the cause of action, the statute being the other and indispensable element; hence limitation against such action runs only from the creation of the new county, and not from the maturity of the original debt.

2. SAME—INDEBTEDNESS PAYABLE FROM SPECIAL FUND.

A county cannot plead limitation to an action against it to enforce an obligation payable from a particular fund without first showing that it has provided such fund.

In Error to the Circuit Court of the United States for the District of Idaho.

This action was commenced September 30, 1897, by the plaintiff in error, to recover a judgment against the defendant in error for the sum of $10,590, with interest, the amount alleged to be due on certain bonds and coupons issued by Alturas county, Idaho, under and in pursuance of an act of the legislature of the state of Idaho entitled "An act providing for the erection of a court house and jail at Hailey, the county seat of Alturas county," approved February 8, 1883. The bonds were issued May 1, 1883, and were made payable November 1, 1891. The legislature of Idaho, in 1895, passed an act entitled "An act to abolish the counties of Alturas and Logan, and to create and organize the county of Blaine," approved March 5, 1895. This act provides: Section 1: "The counties of Alturas and Logan are hereby abolished, and the county of Blaine is hereby created, embracing all of the territory heretofore included within the boundary lines of said Alturas and Logan counties." Section 7: "All valid and legal indebtedness of Alturas and Logan counties shall be assumed and paid by the county of Blaine." Section 8: "* * * All rights of action now existing in favor of, or against, said Alturas or Logan county, may be maintained in favor of or against Blaine county." Sess. Laws Idaho 1895, pp. 31, 33. It appears from the averments of the amended complaint: That the act authorizing the issuance of the bonds provided that "the board of county commissioners of said county shall, at the time of levy of county taxes, include therein a levy of sufficient tax to meet the interest and principal of said bonds as the same shall become due, and the tax so levied shall be known as the court-house bond tax, and shall be collected as other taxes are collected, and shall constitute a separate fund, and shall be used for no other purpose. And for the payment of said bonds, principal and interest, all the taxable property of said county is hereby pledged." That said bonds and coupons were, as they respectively matured, presented for payment to the treasurer of Alturas county, while it existed, and to the treasurer of Blaine county since the creation thereof, and payment thereon demanded by the holder thereof; and that the payment thereof, or any part thereof, was refused, on the ground that there was no money in the treasury applicable to their payment. That the commissioners of Alturas county neglected and refused to levy any tax to meet the interest and principal of said bonds as they became due. That on February 7, 1889, the legislature of Idaho divided Alturas county, and from its territory formed the counties of Elmore and Logan, and gave other portions to Bingham county, provision being made for apportioning the indebtedness, except the bonded court-house indebtedness, which was to remain the indebtedness of Alturas county. That on the 18th of March, 1895, the legislature of Idaho passed an act creating the county of Lincoln out of the territory of Blaine county, apportioning the indebtedness between said coun-

ties, the bonded court-house indebtedness of Alturas being included as part of the indebtedness of Blaine county. Since the creation of Lincoln county, such proceedings have been had that Blaine county has a judgment against Lincoln county for its proportion of said indebtedness, including the court-house bonded indebtedness of Alturas county. Blaine Co. v. Lincoln Co., 52 Pac. 165. To the original complaint the defendant interposed a demurrer upon two grounds: (1) That the said complaint does not state facts sufficient to constitute a cause of action; (2) that the alleged cause of action in the complaint is barred by the provisions of section 4052 of the Revised Statutes of the State of Idaho. This section, in prescribing the time within which suit may be brought, reads as follows: "Sec. 4052. Within five years: An action upon any contract, obligation, or liability founded upon an instrument in writing." The court sustained this demurrer. Robertson v. Blaine Co., 85 Fed. 735. The complaint was thereafter amended. A similar demurrer was interposed thereto, and sustained, and judgment thereafter rendered in favor of the defendant for its costs.

Selden B. Kingsbury, for plaintiff.
Lyttleton Price, for defendant.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts). Did the court err in sustaining defendant's demurrer? Is this action barred by the statute of limitations? The entire argument on behalf of the defendant clusters around the proposition that this is an action upon the original bonds, and not upon a debt growing out of them created at a subsequent date; that the act creating the county of Blaine simply provided that Blaine county should assume the payment of the bonded indebtedness of Alturas county; that it did not in terms create any new debt or obligation, but simply recognized the validity of the obligation created by Alturas; that there was no change as to the time when said bonds should become due; that Blaine county agreed to pay the bonds, stepped into the shoes of Alturas county, and was to pay just as Alturas would have paid them had it lived; that it assumed all the burdens and became invested with all the rights and privileges that Alturas would have possessed if Blaine county had not been created; that, if Alturas had continued to exist in the same condition it was when the bonds were issued, it could have successfully pleaded the statute of limitations. The proposition contended for is tersely stated in its brief as follows:

"If plaintiff has an action at all, it is not upon a new debt, nor a legislative debt, nor a new obligation, nor upon a specialty, nor a novation; it is the old debt of Alturas county. That county being dissolved, a new payor is created to discharge the obligation just as Alturas had it and left it."

If this contention is sustained, it necessarily follows that as the bonds became due November 1, 1891, and more than five years elapsed from that date before the action was commenced, the statute of limitations would apply. On the other hand, the plaintiff contends that the statute does not apply for various reasons, which are specifically stated by counsel as follows:

"(1) Because the duty of providing for and paying this debt was so imposed and assumed as to make the debtor county the donee of a power, and a

trustee of a direct, express, and continuing trust, unaffected by the statute of limitations.

"(2) Because the act authorizing and requiring the creation of this debt provided for the levy of a special tax, and created a special fund, which tax was never levied, and which fund never contained any moneys; nor was any money ever in the treasury of the debtor county applicable to the payment of this debt.

"(3) Because of new promises; of renewal of the indebtedness; of many subsequent acknowledgments of the debt; and because of the creation of a new legislative obligation and debt upon the defendant county, based upon the original debt, and into which the original debt is merged.

"(4) Because of the new promises and acknowledgments embraced in and implied in legislative acts and legal proceedings thereunder; of the making provision for the payment of said indebtedness; of the apportioning of the same, and creating legislative debts upon other counties than the debtor county, to aid the debtor county in the payment of the same.

"(5) Because of statutory provisions requiring a new county to pay its proportionate share of any bonded indebtedness outstanding against the parent county, and requiring such payments to be used only in aid of paying such bonded indebtedness; and because of various acts, suits, and proceedings done, instituted, and undertaken by the debtor county to secure aid from other counties in obtaining funds on account of and for payment of this indebtedness.

"(6) Because of the various acts of the legislature regarding said indebtedness, regarding the county which created the same, regarding other counties created out of said county, regarding the funding of the indebtedness, regarding the apportionment of the indebtedness; and because of acknowledgments and promises made and necessarily implied in various suits, actions, and legal proceedings had and taken concerning said indebtedness by the defendant county, and the result of the same."

What is the character of this action? How should it be classified? Is it an action upon a contract, obligation, or liability founded upon an instrument in writing? No action could be maintained against Blaine county upon the bonds and coupons issued by Alturas county except by force of the act of the legislature approved March 5, 1895. It is by virtue of the provisions of this act that plaintiff seeks to maintain this action against defendant. The liability or obligation of Blaine county to pay the bonds and coupons issued by Alturas county did not, and could not, arise except by legislative action. Under the provision of the act organizing and creating the county of Blaine, it assumed and agreed to pay "all valid and legal indebtedness of Alturas" county; and in said act it was provided "that all rights of action now existing in favor of or against said Alturas * * * county may be maintained in favor of or against Blaine county." The bonds and coupons at that time were a part of the "valid and legal indebtedness" of Alturas county, which Blaine agreed to pay. Its liability was then fixed and determined. The bonds and coupons issued by Alturas county constitute an important ingredient in the action, but they are not all of the case. As against Blaine county, they are but matters of inducement to the action. All these things must be taken into consideration in determining the character, cause, and nature of this action. It is not simply an action upon a contract made with, or an obligation or liability created by, Alturas county. The act abolishing Alturas county, and creating the county of Blaine, is as essential to the plaintiff's right of action as is the fact of the

issuance of the bonds in the first instance by the county of Alturas. The cause of action is the bonds issued by Alturas, and the statute which fixes the liability of the county of Blaine for their payment. In order to state his cause of action, the plaintiff was required to plead, and, if the case was tried, would be compelled to prove, both the issuance of the bonds and the statute whereby Blaine county agreed to pay them. Neither pleaded alone would constitute a cause of action in favor of plaintiff against defendant. It is the nature of the whole cause of action which determines the applicability of the statute of limitations.

So far as Blaine county is concerned, the bonds are but the evidence of the valid and legal indebtedness of Alturas, which it agreed to pay. The debt was originally to be paid by Alturas county. Blaine county, except for the provisions of the statute referred to, could not be held answerable for the debt; but, by the act, new obligations were created, and the manner of payment was changed. To recapitulate: The statute created a debt, duty, or obligation against Blaine county, to recover a portion of which this action is brought; but, in order to show a cause of action against Blaine county, it devolved upon the plaintiff to allege the issuance of the bonds by Alturas county, and their nonpayment, because the existence of such facts was necessary in order to show that they constituted a part of the valid and legal indebtedness of Alturas county, which Blaine county, by virtue of the provisions of the statute, became liable to pay. This debt, or obligation, or whatever it may be called, is in the nature of a specialty, and, in our opinion, is not barred by the provisions of section 4052 of the Revised Statutes of Idaho.

The legal principle which controls this question is not new. It is found in leading text-books, and in a great variety of decided cases,—in relation to the jurisdiction of courts, to the different character and causes of action, as well as to the construction of the statute of King James, and to different state statutes of limitation. It has been applied to actions of debt created partly by contract and partly by statute, as well as to debts created solely by statute. The cases, although different in their facts, are all more or less akin in principle to the present case, and the general trend of all analogous cases is substantially in the same vein, and is in accord with the views we have expressed. Bullard v. Bell, 1 Mason, 243, Fed. Cas. No. 2,121; Van Hook v. Whitlock, 3 Paige, Ch. 409; Cowenhoven v. Board, 44 N. J. Law, 232; State v. Baker Co., 24 Or. 141, 145, 33 Pac. 530; Pease v. Howard, 14 Johns. 479; Lane v. Morris, 10 Ga. 162; Higby v. Calaveras Co., 18 Cal. 176, 179; Andrews v. Bacon, 38 Fed. 777; Barling v. Bank, 1 C. C. A. 260, 50 Fed. 260, 262; Richards v. Bickley, 13 Serg. & R. 395, 399; Jordan x. Robinson, 15 Me. 167; Railway Co. v. Goode, 13 C. B. 826; 1 Wood, Lim. Act. §§ 19, 36, 38, 39, 40a; Ang. Lim. 79, 80.

In 1 Wood, Lim. Act. § 39, it is said that:

"The test by which to determine whether a statute creates a specialty debt or not is whether, independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether independently

of the statute a right of action exists for a breach of the duty or obligation imposed by the statute. If so, then the obligation is not in the nature of a specialty, and is within the statute; * * * but, if the statute creates the duty or obligation, then the obligation thereby imposed is a specialty, and is not within the statute."

Apply this test to the present case. Independently of the statute, the law does not imply any obligation upon Blaine county to pay the debt; nor, independently of the statute, could any right of action be maintained against Blaine county. But the statute does create the duty or obligation on Blaine county to pay the same, and "the obligation thereby imposed is a specialty," and is not within the provisions of the statute of limitations pleaded herein.

Railway Co. v. Goode was an action of debt by a railway company against one of its members, for calls, under the authority of an act of parliament; and the plea was that such causes of action did not accrue within six years; and this plea was confronted by a demurrer. The argument in the case on the one side went upon the ground that the liability of the defendant, which gave the right of action, was the creature of the statute. while in opposition it was insisted that the sole liability was founded upon an implied contract.

Jervis, C. J., said:

"I think it is an action upon statute. * * * But for the act of parliament, no action could be brought by the company against one of its own members. This, therefore, is an action brought in respect of a liability created by statute, and therefore is an action founded upon the statute, and the plea which relies upon the six-years limitation is no answer to it."

Maule, J., said:

"A declaration in debt upon a statute is a declaration upon a specialty; and it is not the less so because the facts which bring the defendant within the liability are facts dehors the statute. That must constantly arise in actions for liabilities arising out of statutes. * * * The allegation in the plea that the action is upon contracts without specialty is a false allegation of a matter of law. * * * I think it manifestly appears that this is an action of debt, and upon the statute, and therefore an action upon a specialty."

The other judges concurred in this view.

In Lane v. Morris, a stockholder pleaded the statute of limitations in an action brought against him upon his liability for the debts of a corporation. The court held that the cause of action was founded on the statute creating his liability, and numerous authorities were there cited "to sustain the position that an action of debt, founded upon a statutory liability, has never been considered as being within the statute of limitations of 21 Jac. I. c. 16, of England, or of the like statutes in this country, but that such statutory liability has always been regarded in the nature of a specialty." And in the course of the opinion the court said:

"There can be no doubt that the liability of the defendant, as a stockholder, for the ultimate redemption of the bills of the bank, is created by the eleventh section of the statute incorporating the Planters' and Mechanics' Bank of Columbus. Without that section in the act, he would not be liable to the plaintiff, as a holder of the bills of the bank."

In Bullard v. Bell, Mr. Justice Story held that the statute of New Hampshire did not apply as a bar to an action of debt against a stockholder of a bank under the provisions of its charter imposing a personal responsibility upon the shareholders for the notes of the institution in case they should be dishonored. There, as here, the action was brought upon a liability created, not merely by the original parties, but by the express terms of the statute. In the course of the opinion the learned justice said:

"I agree at once to the position that the bills of the bank are to be considered originally as the debts of the corporation, and not of the corporators; and, except for some special provision by statute, the latter cannot be made answerable for the acts or debts of the former. * * * Whatever is enjoined by a statute to be done creates a duty on the party, which he is bound to perform. The whole theory and practice of political and civil obligations rest upon this principle. When, therefore, a statute declares that, under certain circumstances, a stockholder in a bank shall pay the debt due from the bank, and those circumstances occur, it creates a direct and immediate obligation to pay it. The consideration may be collateral or not, but it is not a subject-matter of inquiry. * * * Here, then, the law has declared that the stockholders shall be liable to pay a specific sum, and it imposes on them a duty so to do. * * * The law has created a direct liability,—a liability as direct and cogent as though the party had bound himself under seal to pay the amount, in which case debt would undoubtedly lie. The law esteems this an obligation 'created by the highest kind of specialty.'"

In Van Hook v. Whitlock, which was a suit against the stockholders for the debt of the corporation, the court, in discussing the question as to the statute of limitations, among other things, said:

"If the debts were actually due from the corporation at the time of its dissolution, it can make no difference whether they were due from the corporation by judgments, or specialty, or only by simple contract. The right of action against the stockholders is founded upon the statute; and the form of the action against them must be the same, whatever may be the nature of the original indebtedness of the company. If an action at law is brought against the stockholders, it must be either an action of debt or assumpsit, founded upon their liability created by the statute."

In Barling v. Bank, it was contended that the action was founded upon the assignment of certain bills of exchange; but the court held that it was founded on the liability created by section 322 of the Civil Code of California, which provides for the individual liability of the stockholders for the debts of a corporation. Deady, J., in delivering the opinion of the court, said:

"But the present action is not really founded on an assignment of the bills, but on the liability created by said section 322 of the Civil Code. In this action the assignment of the bills of exchange is a mere ingredient or inducement. By reason or means thereof the plaintiff became and was a creditor of the Alaska Improvement Company. In this condition the statute operated, and gave it a right of action against the defendant, as stockholders of the corporation, for the amount of its claim against the latter. This was an original right, then created, which did not exist before or otherwise."

In Angell on Limitations, it is said:

"That where the liability of the defendant is created, not merely by the act of the parties, but by positive requisitions of the statute, the plaintiff is not barred."

Under the law of Idaho, the statute of limitations may run against a specialty. Section 4054, p. 437, Rev. St. Idaho, reads as follows:

"Within three years: (1) An action upon a liability created by statute, other than a penalty or forfeiture." But this action was commenced within less than three years after the act was passed making Blaine county liable for the indebtedness of Alturas. An action against a county upon which the legislature has imposed a duty of paying the indebtedness of the county out of which territory it was carved does not stand precisely in the same condition as an individual who assumes and agrees to pay the debt of another person. The liability in the case against the county is created by a statute, and the other by the voluntary act of the individual. It is true that the right to sue or be sued attaches, under the statute of most of the states, to a county the same as to an individual. But it is not true that debts created by statute are placed upon the same plane as debts created by a contract. Numerous illustrations of this principle might be given; for instance, the constitutional provision that no county shall create any debts or liabilities which shall exceed a specified sum does not necessarily imply that all debts and liabilities against the county over and above that sum are in violation of such provision. Counties, as is well known, do not create all the debts and liabilities they are under. Debts and liabilities are, ordinarily, imposed upon them by law. A county is often said to be a mere agency of the state government,—a function through which the state administers its affairs; and it frequently has but little, if any, option in the creation of debts and liabilities against it. It is for these or similar reasons that courts have generally held that this provision of the constitution only applies to such debts and liabilities as the county in its corporate capacity and character, like an individual, voluntarily creates.

In whatever light this case may be viewed, it must always be admitted that the liability of Blaine county to pay the valid indebtedness of Alturas county, which existed at the time Blaine county was organized, is a liability created by the statute. No twisting of words, no reference to the facts, no analogy drawn from any of the decided cases, will permit any denial of this proposition. Concede, for the purpose of the argument, that, if Alturas county had continued to exist, it could have successfully pleaded the provision of the statute of limitation pleaded in this case; it does not follow that Blaine county could plead it because its liability is fixed definitely by the statute, and has nothing to do with the special character of the indebtedness of Alturas county. It is wholly immaterial whether plaintiff's claim was a judgment, an ordinary indebtedness for services rendered or supplies furnished, or a "contract, obligation, or liability founded upon an instrument in writing"; the liability of the defendant in either event is created by the statute, and the limitation, and the only limitation which the defendant can plead, must begin at or after that date, because that is the date its liability first began.

In Board of Com'rs of Custer Co. v. Board of Com'rs of Yellowstone Co., 6 Mont. 39, 47, 9 Pac. 586, 590 (which was a case growing out of a legislative act [Laws 1883, p. 119] creating the county

of Yellowstone from what had formerly been Custer county and a small portion of Gallatin county, and the act provided that the indebtedness of the county of Custer existing at that time should be apportioned between the two counties by the commissioners), in passing upon certain questions involved therein, the court said:

"The indebtedness, if any, is one wholly created by the statute. Without a provision for the existence of such indebtedness by the respondent, the liability for the whole of the indebtedness of Custer county, as it existed immediately before the creation of Yellowstone county, would rest upon the appellant. * * * When, by the terms of this act, did this indebtedness arise? Section 2 of the act provides that the indebtedness of the county of Custer, as the same shall exist on the 1st day of March, 1883, shall be apportioned between the said county and the county of Yellowstone, and then the provisions for the manner of the apportionment follow. This was not merely the recognition of a moral right in Custer county, and a corresponding moral obligation upon Yellowstone county in respect to this indebtedness, to be afterwards erected into a legal right and corresponding legal obligation by the action of the county commissioners of both counties at their meeting on the first Monday of March, 1883, as provided in section 3; but it was then and there ·the creation, upon the first day of March, 1883, of a legal right in Custer county to have paid to it, and a legal obligation úpon Yellowstone county to pay to the appellant, in the manner provided in the act, its proportion of the indebtedness as it existed upon the 3d of March, 1883."

See, also, Cheyenne Co. Com'rs v. Bent Co. Com'rs, 15 Colo. 320, 329, 25 Pac. 508; Canyon Co. v. Ada Co. (Idaho) 51 Pac. 748; People v. Hulbert, 71 Cal. 72, 12 Pac. 43.

The views already expressed are conclusive upon the questions involved herein. But there is another principle which we also believe to be applicable to this case which leads to the same result. The bonds and coupons herein sued upon were, by the statute authorizing their issuance, payable out of a particular fund, which was never provided for by Alturas county. The provisions of this statute imposed a continuing duty (Elmore Co. v. Alturas Co. [Idaho] 37 Pac. 349), and became a part of the contract between Alturas county and its bondholders (Von Hoffman v. City of ·Quincy, 4 Wall. 535, 554; Mobile v. Watson, 116 U. S. 289, 305, 6 Sup. Ct. 398; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190; Gasquet v. Board, 45 La. Ann. 342, 12 South. 506; Bassett v. City of El Paso [Tex. Sup.] 30 S. W. 893; Maenhaut v. New Orleans, 2 Woods, 108, Fed. Cas. No. 8,939, and authorities there cited; Cooley, Const. Lim. 355). The facts alleged in the complaint bring this case within the general rule that, when payment is provided for out of a particular fund, or in a particular way, the debtor cannot plead the statute of limitations without first showing that the particular fund has been provided, or that the particular ·method prescribed by statute has been complied with. It is true that, in the cases cited by plaintiff's counsel where this principle is announced, there was either an amendment to the original act, or a new law providing a different method of levying and collecting the necessary tax to create a fund out of which the bonds or coupons should be paid.

Defendant, in this connection, contends that, in the cases cited upon this point, the obligation was created by the statute, while

in this case "only the right of action is given by statute." It would, it seems to us, be more accurate to say that the statute not only gives the right of action against Blaine county, but creates an obligation upon Blaine to pay the debt. In so far as the principle of law is involved, what difference does it make whether an amendment is made to the law, as to the levy and collection of a special tax to pay the indebtedness, or the passage of a new and independent act which casts the burden of payment upon another county? In both cases the right of action might be said to be upon the bonds; but in both a new obligation or liability is created, either as to the indebtedness or the method of collecting the same. In neither can the debt be paid unless provision is made for a fund applicable to its payment. A well-settled principle of law should not be cast aside simply because the case in hand is not "on all fours" with the decided cases in which it has been applied. Facts often change. The principle of law remains the same. It is unusual or rare that cases are found precisely alike in the facts; but it is quite common to find a principle of law applicable by analogy and reason to varied conditions as to the facts.

The general principle referred to is clearly stated in Lincoln Co. v. Luning, 133 U. S. 529, 532, 10 Sup. Ct. 363, 364, where the court said:

"The remaining question arises on the statute of limitations. By the general limitation law of the state, some of the coupons were barred; but there has been this special legislation in reference to these coupons. The bonds were issued under the funding act of 1873. In 1877 the county was delinquent in its interest, and the legislature passed an act amendatory to the act of 1873. This amendatory act provided for the registering of overdue coupons, and imposed upon the treasurer the duty of thereafter paying the coupons as money came into his possession applicable thereto, in the order of their registration. St. Nev. 1877, p. 46. The coupons, which by the general limitation law would have been barred, were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted. Thereupon the treasurer registered them as presented, in accordance with the act of 1877; and, from the time of their registration to the commencement of this suit, there was no money in the treasury applicable to their payment. This act providing for registration and for payment in a particular order was a new provision for the payment of these bonds, which was accepted by the creditor, and created a new right upon which he might rely. It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait. It amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as money came into the interest fund; and such promise was by the creditor accepted; and, when payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided."

In support of these views, the court cites Underhill v. Trustees, 17 Cal. 172; Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646.

In Freehill v. Chamberlain, it was argued that as the coupons in question matured, according to their face, on the 1st of January, 1872, the statute of limitations bars any proceeding on the part of petitioner to enforce payment; that, if the proper amount of taxes were not levied in any one year, such levy should have been com-

pelled by mandamus; that, if any step necessary to have the proper funds in the treasury had been omitted, a proceeding to compel such step was the proper course. The court, in reply to this contention, said:

"We do not understand this to be the law as applicable to this case. According to the act of April 25, 1863, * * * no action could be maintained against the city on these bonds or coupons. By law, it was the duty of the city to make provision for the payment of the bonds and coupons according to the statute under which they were issued; and, by omitting to perform such duty, the city could not create the defense of the statute of limitations. Not until the funds were in the treasury, properly applicable, would the statute begin to run. Not until that period would the petitioner have any right of action or proceeding against the treasurer. The contrary view would place it in the power of a municipality in many cases to avoid all payment of its debts, because if, by concert of action, each officer should omit to perform his duty, the time consumed in compelling each to perform such duty might be made to consume all the period of the statute before the funds would reach the treasury. We do not think the legislature intended such result."

See, also, State v. Board of Comr's of Lincoln Co., 23 Nev. 262, 45 Pac. 982; Sawyer v. Colgan, 102 Cal. 283, 292, 36 Pac. 580; Spaulding v. Arnold, 125 N. Y. 194, 198, 26 N. E. 295; Gasquet v. Board, 45 La. Ann. 342, 12 South. 506; King Iron Bridge & Mfg. Co. v. Otoe Co., 124 U. S. 459, 8 Sup. Ct. 582.

Alturas county was not at the time of its dissolution in such a condition that it could have pleaded the general statute of limitations herein relied upon.

We do not deem it necessary to examine any of the other grounds discussed by the plaintiff in error. After a careful consideration of all the questions involved herein, we are of opinion that the section of the statute of limitations pleaded and relied upon by defendant does not apply, and was not intended by the legislature to apply, to a case like the present. The court erred in sustaining the demurrer. The judgment of the circuit court is reversed, and cause remanded for further proceedings, not inconsistent with this opinion.