COOKE, COUNTY SUPERINTENDENT OF SCHOOLS, V. SCHOOL
DISTRICT NO. 12.

1. COUNTIES — DIVISION — SCHOOL FUND.— The act of February 25, 1887, creating the county of Logan out of territory formerly embraced by the county of Weld, having made no provision for a division of the school fund, Weld county is entitled to retain the whole fund belonging to it before the division.

2. General Statutes, section 3067, provides that the county superintendent of each county shall annually estimate "what proportion of the general school fund which may be distributed during the then current year among the districts of his county shall belong to each district." Held, that the making of such estimate is not of itself sufficient to vest in the several districts the ownership of their respective shares. A proper construction of all the provisions of law on the subject leads to the conclusion that the counties, and not the school districts, are owners of the school funds until they are accredited to the several school districts.

## Error to District Court of Weld County.

ALL the facts necessary to an understanding of the decision are sufficiently stated in the opinion, save the provisions of the school law mainly relied upon. These provisions read as follows:

"Sec. 3067. On or before the first Monday of October next, after having received the reports from the secretaries of the several districts as provided in section fifty-five (55) of this act, and annually thereafter, the county superintendent of each county shall estimate what proportion of the general school fund which may be distributed during the then current year among the districts of his county shall belong to each district.

"Sec. 3068. The county superintendent shall apportion the said fund among the districts entitled to the same according to the number of persons of school age as shown by the census list of the several districts. He shall, after such apportionment is ascertained, proceed as directed in section nineteen (19) of this act."

"Sec. 3014. The county superintendent shall appor-

tion all school money to the school districts in accordance with the provisions of section 72 of this act, quarterly, to wit, on the first Monday in January, April, July and October in each year. Immediately after such apportionments he shall certify to the county treasurer the amounts which are to be placed to the credit of the several districts, and notify the treasurer of each district of the amount placed to its credit."

Messrs. JAS. W. McCREERY and H. N. HAYNES, for plaintiff in error.

Messrs. MARKHAM & DILLON and C. A. BENNETT, for defendant in error.

DE FRANCE, C. By a legislative act approved February 25, 1887, and taking effect from and after that date, the county of Logan was created out of territory formerly embraced by the county of Weld.

The defendant in error, school district No. 12 of Logan county, claims that at that time it was, and had been for several years prior thereto, school district No. 12 of Weld county; that it still embraces the same territory and has the same boundaries as when originally organized; that it lost none of its rights as a school district under the laws of the state by reason of the creation of the new county; and that it is entitled to a proportionate share of the general county school funds in the treasury of Weld county on the first Monday of April, 1887, the same as though the county of Logan had not been created. The county superintendent of schools of Weld county having refused to recognize such right, this action was instituted by such district against said superintendent to compel the latter, by writ of *mandamus*, to recognize the same, and to perform and carry out what it asserts was the duty of such officer in the premises. The writ was granted by the court below, and the cause has been brought to this court for review.

The act creating Logan county makes no proper provision for a division between the new and the old county of the funds or property belonging to the old county. See opinion of this court, recently filed, in the cases of *Logan Co. v. Weld Co.*, and of *Washington Co. v. Same, ante,* p. 152. These cases, in which said opinion is filed, were brought to enforce an equitable division of surplus county and road funds.

The law, aside from said act, contains no such provision, and, in the absence of an express statutory provision to that effect, the old county is entitled to retain the school funds now in question, if they belonged to it at the time of the creation of the new county. See opinion *supra,* and cases there cited.

A fair and proper construction of all the provisions of law concerning the public school system of this state can, we think, lead to but one conclusion with regard to the ownership of the funds over which this contention has arisen; and that conclusion is that they belonged to the county of Weld, for the purposes for which they had been provided, until accredited to the different school districts of that county under the law. Whether the ownership of such funds may be held to continue in the county after being so accredited to the districts, and until the money is actually paid out by the treasurer of the county in the manner provided by law, we need not say.

It is contended by counsel for defendant in error that at least after, if not before, the annual estimate provided for in section 3067, General Statutes, is made, the funds provided for the current school year belong to the school districts in proportionate parts, according to such estimate, and not to the county; and that, when such estimate was made in October, 1886, by the county superintendent of Weld county, the right of defendant in error to a proportionate share of such funds attached and became vested in it, and that such right was not divested or impaired by the creation of Logan county. Much im-

portance seems to be attached by counsel to the words "shall belong to each district," found in said section 3067; but the language of this section must be construed in connection with all other provisions of the law which have a bearing upon the same subject-matter. When thus construed the words "shall belong to each district" cannot be held as importing an ownership in the districts from the date of such estimate, but rather that at some time thereafter the districts should have such control over or interest in such funds as is provided by law. The making of such estimate does not include an apportionment of the funds, for no part thereof is thereby actually set apart or credited to any district; nor is that done until the quarterly apportionments are made as provided for in section 3014, General Statutes. The amount which each district shall receive during the year is not fixed by such estimate; nor could it be, for such amount depends upon the amount to be derived from the collection of taxes and from other sources, as well as upon forfeitures and the creation of new districts from unorganized territory. Such new districts, if any be created, are entitled to a share of such funds. Sec. 3025, Gen. St. They must, within the time limited by the section last named, open and maintain public schools. A public school is one that derives its support in whole or in part from moneys raised by taxation. Taxes for the support of our common schools are all levied by the respective counties, and but once in each year. A new district may be created from unorganized territory shortly after such annual levy; and in that case, if it were not entitled to a portion of the public funds, it could not, for want of proper funds, maintain the school required by law, and would as a consequence lose its organization. By giving to such new district its share, the amount going to each of the old districts is proportionately reduced. In case of forfeiture by one or more districts, then the amount going to each of the others is, by reason of such forfeiture, pro-

portionately increased.    The fact that the amount or proportion to which each district may be entitled is thus subject to diminution or enlargement undermines and destroys the argument advanced by counsel for defendant in error that a right attached and became vested in it to a proportionate share of the funds in dispute upon the making and from the date of such annual estimate.

The act establishing Logan county does not refer to or mention by name the subject-matter of school funds or of school districts, unless school funds were intended to be included in the expression "all matters of revenue," found in section 11 of said act; and, if such was the intention, then for the want of a proper provision for their apportionment or division between the two counties, or the respective school districts thereof, the old county is entitled to retain the same as funds belonging to it, according to the principles announced by this court in the opinion hereinbefore referred to.

That the general school fund, referred to in section 3067 of the General Statutes, belongs to the county, to be used and distributed for the purposes and in the manner provided by law, until such time at least as it is apportioned and accredited to the respective school districts, is evidenced, we think, by the whole tenor of the law, and notably by section 4, article 9, of the state constitution, and sections 3006, 3064, General Statutes.    The custody and control thereof is in the county, through its proper officers, until actually paid out by the county treasurer. It is not paid or delivered over to the school districts or their respective treasurers, but it is kept in the county treasury and paid out to the legal holders of the orders of such districts, properly drawn in favor of parties to whom the districts have become lawfully indebted, and not otherwise.    Sec. 3048, Gen. St.    The special district funds are paid out in the same manner, but the districts themselves direct the levy of such special funds and its amount, while they have no voice in the levy of the

county school tax. The county commissioners control the latter,— under certain restrictions, it is true,— but they are given a discretion, within certain limits, as to the amount of such general levy. The control of the general fund is thus removed from the districts as far as it may be consistently with their right to participate in the same at all, or in the benefits to be derived therefrom. Counties are expressly made responsible to the state for taxes levied for state purposes, with certain exceptions (sec. 2686, Gen. St.); but there is no statutory provision, so far as we can discover, which makes a county liable to school districts, or otherwise, for a loss of the general school fund, even though such loss should occur after the fund has been apportioned and accredited to such districts. A county school superintendent has no supervision over school districts situated outside of his own county; nor has he any official knowledge thereof or official connection therewith; nor has he any authority to apportion to such outside districts the general school fund of his county, or any part thereof.

The case presented is one of apparent hardship. But the courts are powerless in the premises. It was competent for the law-making power, when it established Logan county, to make provision for an apportionment of the fund in question; but it did not see fit to do so. Its failure in this respect may be deemed an omission or oversight, but it is one which the courts cannot supply without passing outside of their own province. They cannot extend provisions of law enacted for an entirely different purpose, and having no such object in view, to apply to a case in hand in order to furnish the relief demanded, for that would be no less than usurpation. When courts undertake to make laws for "hard cases" they pass out of their proper sphere. We are constrained to deny the relief sought. The judgment must be reversed and the action dismissed.

RISING, C., concurs. STALLCUP, C., dissents.

PER CURIAM.    For the reasons stated in the foregoing opinion the judgment is reversed and the cause remanded, with directions to dismiss the action.

*Reversed.*

ELLIOTT, J. (*dissenting*).    This action was heard and determined on demurrer before Hon. A. P. RITTENHOUSE, judge of the eighth judicial district, at the November term, 1887, of the district court of Weld county.    After a careful review of the case, I cannot concur in the opinion approved by the majority of this court.    The following section of the General Statutes, in addition to those already quoted above, is necessary to an understanding of this opinion:    "Sec. 3035.    Each regular organized school district heretofore formed, or that may be formed, as provided in this act, is hereby declared to be a body corporate, by the name and style of school district No. ——, in the county of —— and state of Colorado, and in that name may hold property and be a party to suits and contracts the same as municipal corporations in this state."

In the cases of *Washington and Logan Cos. v. Weld Co.* 12 Colo. 152, this court somewhat reluctantly decided that the new counties, though formed out of territory previously belonging to the old county, were not entitled to any part of the surplus money in the treasury of the old county.    The decision was based upon the ground that the general assembly, in creating the new counties, had not provided for any division of the public funds, and that there was no existing provision of our constitution or laws by which the division could be made. The decision, though based upon strict law and the doctrine of *stare decisis*, nevertheless seemed harsh, for the reason that there was a surplus of $60,000 in the county treasury which had been collected by taxation from the inhabitants of the new counties as well as the old, in proportion to the value of their property, respectively,

and the new counties were furthermore required to pay a share of the indebtedness of the old county in proportion as their taxable property bore to the taxable property of the old county. But the decision was unavoidable on account of the absence of any pertinent provision of our law which could be used as a basis for the apportionment of the public funds in such cases. Every principle of natural justice and equity requires that those who contribute to a public fund by the payment of taxes levied equally upon their property shall be entitled to participate equally in the enjoyment of such fund. In the enactment of laws creating new counties it will sometimes happen that provision for the distribution of the public funds between counties and other municipalities are omitted, and the courts may in such cases be powerless to remedy any injustice thereby occasioned. Such results are to be deplored. But whenever there are existing statutes which may be reasonably construed and applied so as to prevent any such injustice, in whole or in part, the courts should be careful to give them such construction and application.

The case at bar may be distinguished from the two cases above referred to in many essential particulars. In those cases the controversy was in respect to the surplus of the public moneys of Weld county in the county treasury as an entirety. The fund could not be said to belong to any particular district or municipality of the county as distinguished from any other subdivision thereof. It was subject only to general use and appropriation by the board of commissioners for that county. In this case the fund in controversy is for the use of public schools. It is to be distributed to certain school districts upon an ascertained ratio. These districts are independent corporations. They do not owe their existence to the county, nor can the county interfere with or take away any of their corporate rights or franchises. The school fund does not belong to the county. The

county cannot appropriate or expend a single dollar of it. The county officers are mere trustees or agents of the state to levy, collect and pay it out as directed by law. They have no discretion as to its disbursements. Gen. St. §§ 3059–3061; *People ex rel. v. Board Com'rs Lake Co.* 12 Colo. 89; 1 Desty, Tax'n, §§ 97, 98.

The general law provides for the taking of a school census once a year as a basis for the apportionment or division of the school fund between the school districts. The apportionment based upon this census is to be made once a year, on the 1st day of October. The distribution and certification of this fund, as it is collected, is to be made four times a year. The annual apportionment is a mere question of arithmetic, based upon the ratio which the amount of the tax levy bears to the number of school children in the several districts of the county. The quarterly apportionment is but a computation — a ministerial or clerical act — to ascertain the amount in dollars and cents each school district is entitled to out of the fund then on hand for distribution. Gen. St. §§ 3014, 3049, 3067, 3068.

But it is said that by the division of a school district, or by a change in the boundaries thereof, or by the creation of a new school district within the county, a change in the ratio may become necessary at the time of the quarterly apportionment. Granting this construction of the law to be correct, it does not militate against the claim that each lawfully organized district always has a legal interest in a certain proportion of the public school fund which it helps to create, and that such proportion is ascertainable by a definite rule prescribed by law. It cannot be successfully maintained that a change in the ratio caused by the division of a school district, or by the change in the boundaries thereof, or by the creation of new school districts, works a forfeiture of the right of any school district to its just proportion of the public school fund. If a change in the ratio may be made when

there is no county division without the loss or forfeiture of the rights of a school district, why, then, should a change caused by the division of a county be so fatal in its consequences? The school district is as much a corporation as the county itself. It is a corporation in the county, not of the county. Gen. St. § 3035, *supra*. Why, then, should it not retain its corporate name and corporate entity, notwithstanding the division of the county, and notwithstanding the division of the county may divide the school district itself? Certainly, if the county of Weld retained its corporate name and entity notwithstanding two new counties were created out of its territory, then with equal force it may be said that school district No. 12, which lost none of its territory by the county division, maintained its corporate name and entity intact. How, then, can it be said that this school district lost its right to the public school fund by an act of the general assembly to which it was not a party, and which did not undertake, directly or indirectly, to interfere with its corporate existence, or with any of its rights, privileges or property?

In the Washington and Logan county cases, *supra*, Chief Justice HELM says: " In the absence of restrictive constitutional or statutory provision on the subject, when a new county is created by segregating a portion of the territory belonging to an existing county, the old county retains all assets previously owned by it, including rights of action, funds and other personal property; also all real estate held in proprietary right, save such, if any, as may be within the territory taken away." Such is undoubtedly the doctrine of the books. By analogy it may be said with equal force that, if a school district be incidentally divided by the division of a county, the school district nevertheless retains its corporate name — its corporate entity and franchises. The school district is not blotted out of existence. It still has a local habitation and a name. It may be difficult sometimes to determine

its *locus* — its domicile.   It may be in the one county or
the other, determinable, perhaps, by the site of its school
buildings, the residence of its corporate officers or the
principal part of them, or other pertinent circumstances;
but somewhere it continues to have an existence, and is
not to be treated as an outcast nor as an outlaw.   It may
be orphaned by dismemberment from the parent county,
but it is not disinherited, unless it be so expressed in the
will of the general assembly.   Not only are its corporate
name, its corporate entity and franchises preserved, but
its rights of property, real and personal, legal and equi-
table, whether reduced to possession or otherwise, are in
no way diminished or impaired by the severance of its
territory.   Some portion of its territorial limits may fall
in another county from the one retaining the name and
corporate entity of the old school district, and such terri-
tory may have to be attached to another school district
in another county; but that does not render any more
difficult the distribution of the school fund arising from
taxes already levied than in case of a division of the dis-
trict by any other means than county division.   *People
v. Trustees*, 86 Ill. 613.

It is objected that school district No. 12 in Weld county
is not the same corporate body as school district No. 12
in Logan county.   Such might be the case under some
circumstances.   But to claim that it is necessarily so in
this case would be like contending that the inhabitants
of Weld county residing in that portion of territory out
of which Logan county was created lost their identity
by the act of county division; that they are no longer the
same individuals, and can maintain no action to enforce
their rights.   How long would such a plea be entertained
by a court of justice in case substantial rights were
sought to be affected thereby?   But we need not resort
to argument on this question; for it is conclusively ad-
mitted by the record that school district No. 12 in Logan
county, as it existed after the county division, is the

same identical school district as school district No. 12 in Weld county as it existed before the county division, without the loss of any portion of its territory; so that we are really not embarrassed by the supposed objection above considered. The allegations of the complaint in this behalf are in no way traversed or avoided by the answer.

Again, it is claimed that the plaintiff in error, as county superintendent, can only take notice of the rights of school districts within his own county. This may be true as to all matters arising since the county division, but there is the most obvious propriety in requiring the officers of the old county to recognize and discharge all rights which attached before the county division. In this respect their duties are analogous to the obligations of the individual members of a copartnership after the dissolution. The record in this case, as well as the act of the general assembly dividing the county, shows that the county superintendent has in his office all the records of the old county pertaining to the public schools, including the annual estimate and apportionment of October, 1886, as well as the quarterly apportionment and certification of January, 1887; and so had complete *data* from which he knew or might have ascertained the precise rights of school district No. 12 to the moneys in controversy. In the case of *People v. Board, supra,* this court held, under similar circumstances, that certain county officials would not be permitted to plead that they could not obtain the necessary knowledge relating to school affairs to enable them to carry on the public business intrusted to them. With these records and the sections of the General Statutes heretofore cited before the county superintendent, the rights of school district No. 12 to its just proportion of the public school fund were easily ascertainable. Under such circumstances it was his clear legal duty to so execute the duties of his office that the school district should receive its just and legal dues. In such cases the remedy should be speedy and adequate.

As a last resort we are confronted with the objection that if the school district ever had any cause of action it has mistaken the remedy; that the suit should have been instituted in different form. It may be conceded that cases may arise where, in consequence of a dispute about territorial division changes of school districts or the ratio of apportionment, a civil action against the county treasurer would be a more appropriate remedy. But, as we have seen, there are no such circumstances of dispute or uncertainty in this case. The answer is but a legal argument, based upon an incorrect theory of law. It presents no matters of fact to be investigated. The rights of the school district are clear and undeniable. The amount due is certain, or by simple computation may be rendered certain. The day has gone by when courts of justice should be moved by objections founded upon mere technicalities or the mere forms of actions to defeat substantial rights.

It may be that cases would arise under this view of the law difficult of judicial determination. But difficulties are constantly arising in the construction of new laws and in the harmonizing of them with old statutes so as to preserve personal and property rights thereunder; and in dealing with these difficulties all branches of the government should exercise constant vigilance and patience to prevent the sacrifice of substantial rights as far as possible; and if such misfortune may not be prevented altogether, then the aim should be to reduce them to the least possible minimum. A portion of this public school fund belonged to school district No. 12. I use the word "belonged" advisedly. It is the word used by the statute (section 3067, *supra*); and, until it is clearly demonstrated that the rights of school district No. 12 to this property have been irretrievably sacrificed, it is, in my opinion, the duty of the court to uphold and protect them.