(June 6, 1905.)

## SHOSHONE COUNTY v. THOMPSON.

[81 Pac. 73.]

ORIGINAL PROCEEDINGS FOR WRIT OF MANDATE—DIVISION OF COUNTY—ANNEXATION OF PART OF ONE COUNTY TO ANOTHER COUNTY—ACCOUNTANTS—APPORTIONMENT OF INDEBTEDNESS—ASSESSMENT-ROLL—BASIS OF VALUATION—DATE FROM WHICH TO COMPUTE INDEBTEDNESS—COUNTY PROPERTY—MONEY OF—TAX SALE CERTIFICATES—TAX DEEDS—DELINQUENT TAXES—MONEYS IN TREASURY—COLLECTION OF DELINQUENT TAXES—OWNERSHIP OF MONEY—SCHOOL MONEYS—LIABILITY FOR INDEBTEDNESS TO BE PAID BY WHOM.

1. By the provisions of an act annexing a portion of Shoshone county to Nez Perce county, approved March 10, 1903 (Sess. Laws 1903, p. 204), the assessment-roll of Shoshone county for the year 1903 is made the basis of the valuation of the property assessed therein, and it was not the intention of the legislature that the accountants should deduct therefrom the valuation of property deemed by them to be not taxable. And the accountants must take into consideration the taxable property as shown by said assessment-roll and the valuation therein contained.

2. Whether or not the assessment-roll contains illegal assessments is not a matter for the consideration of such accountants in the discharge of their duties under said act.

3. Said act became a law on May 8, 1903, sixty days after the adjournment of the legislature, but did not go into full effect and

operation until November 19, 1904, that being the date when the result of the election provided for therein was certified to the governor.

4. The term "county property" as used in said act includes property acquired by tax deeds and the value of tax certificates owned by the county, but does not include delinquent taxes; and the value of such county property must be ascertained as directed by the provisions of said act.

5. Section 5 of said act provides for the apportionment of all moneys in the county treasury of Shoshone county at the time said act took effect, and provides that such money be divided between the counties in the same ratio as county property and county indebtedness are divided; and is not to be deducted from the total indebtedness of said county before the apportionment of such indebtedness.

6. Under the provisions of said act, the tax sale certificates and tax deeds and property acquired thereunder, as well as delinquent taxes, belong to Shoshone county.

7. Moneys collected for county and state purposes from taxpayers in the annexed district since November 19, 1904, belong to Shoshone county.

8. The general school moneys in the county treasury not distributed prior to the going into operation of said act, and which would have belonged to the school districts in the territory annexed, had there been no annexation, belong to Shoshone county, and must be prorated as other money is prorated under the provisions of said act. But any school moneys in the hands of the treasurer that have been raised by a special tax in any of the annexed districts belong to the district raising it.

9. Nez Perce county, with the annexed portion of Shoshone county, is liable for its *pro rata* share of the indebtedness of Shoshone county, and its proper officers must issue county warrants therefor to Shoshone county.

(Syllabus by the court.)

ORIGINAL proceedings in this court for a writ of mandate to compel the defendant to make the certificate required by the provisions of an act of the legislature approved March 8, 1903.   Writ granted.

James E. Gyde, for Plaintiff.

Plaintiff contends that it is the duty of the accountants to certify what they find.   (Idaho Laws 1903, p. 204, secs. 4, 5.) If they cannot agree upon all matters, each should certify to

what he finds. If the accountants should be compelled to agree upon all points before making certificates, an obstinate accountant could postpone the settlement between the counties indefinitely. The accountants act clerically and not judicially. (*Blaine Co. v. Smith,* 5 Idaho, 255, 48 Pac. 286; *Blaine Co. v. Lincoln Co.,* 6 Idaho, 57, 52 Pac. 165; *Custer Co. v. Yellowstone Co.,* 6 Mont. 39, 9 Pac. 586, at bottom of page 591.) It is the contention of plaintiff that it is the duty of the accountants to certify to the boards of commissioners of the two counties the amount of indebtedness and moneys in the treasury of Shoshone county on the day the act dividing said county took effect, the taxable property of Shoshone county for the year 1903, the ratable portion of such indebtedness which should be borne by each county, as shown by the official records of Shoshone county, and that it is not within their province or power to go outside of those records in ascertaining what was and what was not taxable property in the year 1903, in Shoshone county, or in determining any other question. The records of Shoshone county are conclusive as to all matters and things found therein, and the accountants cannot go outside of such records to determine any question, evidence of which is found in such records. (Idaho Laws 1903, p. 204, secs. 4, 5; *In re Fremont Co.,* 8 Wyo. 1, 54 Pac. 1073, at p. 1081.) *Mandamus* will lie to compel them to act. (Idaho Rev. Stats., sec. 4977; *Blaine Co. v. Smith, supra; Elmore Co. v. Alturas Co.,* 4 Idaho, 145, 95 Am. St. Rep. 53, 37 Pac. 349.) And the mandate will not be that he certify to a particular state of facts whether he so finds them or not; it will be that he act, but not act in a particular way. (*Pyke v. Steunenberg,* 5 Idaho, 614, 51 Pac. 614; *Kroutenger v. Board of Examiners,* 8 Idaho, 463, 69 Pac. 279; *Riverside Co. v. San Bernardino Co.,* 134 Cal. 517, 66 Pac. 788; Merrill on Mandamus, sec. 32; *Ex parte Brown,* 116 U. S. 401, 6 Sup. Ct. Rep. 387, 29 L. ed. 676; *Ex parte Morgan,* 114 U. S. 174, 5 Sup. Ct. Rep. 825, 29 L. ed. 135; *Ex parte Flippin,* 94 U. S. 348, 24 L. ed. 194; *Ex parte Railway Co.,* 101 U. S. 711, 25 L. ed. 872.) The legislature, subject to constitutional limitations only, has the right, upon the division of a county, either

by creating a new county or annexing a part of the old to another county, to apportion the property and indebtedness of the old county as it may choose, and the courts will not question its validity, however great the injustice may be. The sole relief is in the legislature and not in the courts. (Cooley on Taxation, 3d ed., 413-415, and cases cited; *In re Fremont Co.*, 8 Wyo. 1, 54 Pac. 1073; 7 Am. & Eng. Ency. of Law, 2d ed., 914, and cases cited; *City Council v. Board of Commissioners*, 33 Colo. 1, 77 Pac. 858; *Lowe v. Hardy*, 7 Utah, 368, 26 Pac. 982; *Board of Commissioners v. Commissioners*, 7 Colo. 41, 28 Pac. 476; *People v. Alameda Co.*, 26 Cal. 642; *Board of Education v. State*, 64 Kan. 6, 67 Pac. 559; Dillon on Municipal Corporations, 4th ed., secs. 185-187.) If a county is divided or a part thereof annexed to another county, unless otherwise provided by the legislature or the constitution, the old county retains all property and is liable for all debts. (Dillon on Municipal Corporations, 4th ed., secs. 188, 189.) Lands entered with military bounty land warrants are subject to taxation as soon as entered. (*Goddard v. Storch*, 57 Kan. 714, 48 Pac. 15.) Should the accountants take May 8, 1903, or November 19, 1904, as the date for computing the indebtedness, etc., of Shoshone county? The answer to this question is found in the correct definition of the phrase "at the date this act takes effect." The plaintiff will gladly concede the point to defendant that the act took effect May 8, 1903, instead of November 19, 1904. Plaintiff cites the court to the following to assist it in arriving at a correct meaning of this phrase: Sec. 4 of act in question; Idaho Const., art. 3, sec. 22; *Los Angeles Co. v. Orange Co.*, 97 Cal. 329, 32 Pac. 316. Should the accountants deduct from the indebtedness of Shoshone county the value of the tax sale certificates, tax deeds and delinquent taxes belonging to Shoshone county, before apportioning the indebtedness between the two counties? Plaintiff insists that inasmuch as the act has not provided for the deduction of the value of the tax sale certificates, tax deeds and delinquent taxes due Shoshone county, no deductions shall be made. (*County Commissioners of Cheyenne Co. v. County Com. Bent Co.* (and two other cases consolidated with it), 15

Colo. 320, 25 Pac. 508; *Wash. Co. v. Weld Co.,* 12 Colo. 152, 20 Pac. 273; 7 Am. & Eng. Ency. of Law, 916, and cases cited; Cooley on Taxation, 3d ed., pp. 413-415, and cases cited.)   Do the tax sale certificates, tax deeds and delinquent taxes affecting property in the annexed district belong to Shoshone or Nez Perce county, and who should collect such delinquent taxes? Shoshone county and the officers thereof should collect all delinquent taxes.   (*In re Fremont Co.,* 8 Wyo. 1, 54 Pac. 973, at p. 1085 et seq.; 7 Am. & Eng. Ency. of Law, 913, and cases cited; Cooley on Taxation, 3d ed., 414, 415, and cases cited; *Commrs. of Laramie Co. v. Commrs. of Albany Co.,* 92 U. S. 307, 23 L. ed. 552; Dillon on Municipal Corporations, 4th ed., sec. 188; *Mount Pleasant v. Beckwith,* 100 U. S. 514, 25 L. ed. 699.)   Do the moneys collected for county and state purposes from taxpayers in the annexed district since November 19, 1904, belong to Shoshone county or Nez Perce county?   They belong to Shoshone, since the act providing for the division of the county is silent upon the question. (*Colusa Co. v. Glenn Co.,* 117 Cal. 434, 49 Pac. 457.)   The lien of the taxes for 1904 had already attached on November 19th of that year.   (Idaho Laws 1901, p. 290, sec. 181; *Kings Co. v. Johnson,* 104 Cal. 201, 37 Pac. 870.)   Do the school moneys not distributed prior to the taking effect of said act, and which would have belonged to school districts in the territory annexed had there been no annexation, belong to Shoshone county or Nez Perce county?   (*Cooke v. School Dist.,* 12 Colo. 453, 21 Pac. 496, 719.)   As to the power of the legislature to provide for the annexation of a portion of one county to another and imposing a burden of debt carried by the annexed portion upon the county to which it is annexed, see *Lowe v. Hardy,* 7 Utah, 368, 26 Pac. 982; *Mount Pleasant v. Beckwith,* 100 U. S. 514, 25 L. ed. 699; *In re House Bill,* 12 Colo. 466, 21 Pac. 478; *Perry Co. v. Conway Co.,* 52 Ark. 430, 12 S. W. 877, 6 L. R. A. 665; Dillon on Municipal Corporations, 4th ed., sec. 63, also sec. 189; *New Orleans v. Clark,* 95 U. S. 644, 24 L. ed. 521—particularly at bottom of page 653 and on page 654.

B. S. Crow, for Defendant.

An assessment made upon property which is untaxable is void, as an elementary principle of taxation, and the sale of land made in payment of taxes based upon such an assessment is a void sale, and passes no vestige of title. (*State v. Stevenson,* 6 Idaho, 367, 55 Pac. 886; *People v. Owyhee Min. Co.,* 1 Idaho, 409; *Quivey v. Lawrence,* 1 Idaho, 313; *Commrs. of Custer Co. v. Commrs. of Yellowstone Co.,* 6 Mont. 36, 9 Pac. 586.) The authority on the general question as to whether or not lands selected where the title for the land in lieu of which it is taken is not yet passed upon and approved by the commissioner of the general land office is very plain and definite. (*Cosmos Expl. Co. v. Gray Eagle Oil Co.,* 190 U. S. 301, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860, 47 L. ed. 1064; *C. Clarke,* 32 L. D. 233; *Heirs of Geo. Liebes,* 33 L. D. 458; *Wm. E. Moses,* 33 L. D. 333; *Wisconsin Cent. R. Co. v. Price Co.,* 133 U. S. 496, 10 Sup. Ct. Rep. 341, 33 L. ed. 687.) The equitable title to land in a forest reservation which has been tendered to the government in exchange for other land remains in the applicant until such time as his aplication is accepted by the commissioner of the general land office. (*C. W. Clarke,* 32 L. D. 233; *Cosmos Oil Co. v. Gray Eagle Oil Co.,* 190 U. S. 301, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860, 47 L. ed. 1064.) In determining the indebtedness of the county within the meaning of the statutory provision limiting the same, there should be deducted the cash assets of the county, the amount of the taxes assessed on the county tax-roll for the current year, the amount of taxes now on the rolls for prior years. (*State v. Hopkins* (1896), 14 Wash. 59, 44 Pac. 134, 550; *Mullen v. Sackett,* 14 Wash. 100, 44 Pac. 136, citing *Franch v. City of Burlington,* 42 Iowa, 614; *Kelly v. Pierce Co.,* 15 Wash. 697, 46 Pac. 253.) In determining the indebtedness of the county within the meaning of the constitutional provision limiting the same, the amount should be reduced by deducting the assets on hand. (*Field v. Stroub,* 103 Ky. 114, 44 S. W. 63; *Rodgers v. Lesueur,* 57 Minn. 434, 59 N. W. 488.) Shall the whole of Nez Perce county or only the portion stricken off from Shoshone county and annexed to Nez Perce county be liable for

the indebtedness? (Am. & Eng. Ency. of Law, pp. 25-40; Idaho Const., art. 18, sec. 3.) Under constitutional provisions of this nature, or legislative acts declaring the same principle, it is almost invariably held that the debt of the old county is a lien on the detached portion. (*Marion Co. v. Harvey Co.*, 26 Kan. 181; *Commrs. of Granville Co. v. Commrs. of Vance Co.*, 107 N. C. 291, 12 S. E. 39; *State v. Hordey*, 41 Kan. 630, 21 Pac. 601; *Blount Co. v. Loudon Co.*, 8 Baxt. 74, 8 Heisk. 854; *Watson v. Pamlico Co. Commrs.*, 82 N. C. 17, citing *Commrs. of Carrituck Co. v. Commrs. of Dare Co.*, 79 N. C. 565.)

SULLIVAN, J.—This is an original application to this court for a writ of mandate to Leslie Thompson, the accountant of Nez Perce county, appointed pursuant to the provisions of section 4 of an act of the legislature approved March 10, 1903 (Sess. Laws 1903, p. 204), entitled, "An act to annex a portion of the county of Shoshone to the county of Nez Perce and to submit the question of the proposed annexation to a vote of the electors within the territory to be annexed, and apportion the debt of Shoshone county between the counties of Shoshone and Nez Perce, and to define the boundary of the county of Shoshone, and to define the boundary of the county of Nez Perce, and to define the boundary of the county of Latah, and to define the boundary of the county of Idaho; and make the same a part of the second judicial district."

This proceeding arises from a disagreement of the accountants appointed under the provisions of section 4 of said act, which is as follows: "At the first regular meeting of the board of commissioners next following the annexation of the territory hereinbefore in this act described to the county of Nez Perce the said county commissioners shall each appoint a competent accountant who shall, within ten days after the appointment, meet at the county seat of Shoshone county and take the usual oath of office and proceed then and there to ascertain from the books and records in the auditor's and recorder's offices the whole amount of the indebtedness of the said Shoshone county at the date that this act takes effect,

and to apportion said indebtedness *pro rata* between the counties of Shoshone and Nez Perce, according to the taxable property that the territory annexed bears to the whole as now organized under the provisions of this act should the same take effect; basis and valuation of property to be taken and computed from the assessment-roll and books of the present Shoshone county made for the year next preceding the date of such election. Said commissioners shall apportion the value of the said county property of Shoshone county upon the same basis as is provided for the apportionment of the indebtedness of Shoshone county, and said accountant shall, in adjusting said indebtedness of the said county property, allow Shoshone county to retain all county property, such as courthouses, furniture and fixtures, but the said Nez Perce must give Shoshone county credit in the adjustment of the accountants for the annexed territory's apportionment of the value of the said courthouses and other county property. Said credit to apply in the adjustment of Nez Perce county's portion of the indebtedness to Shoshone county. Said accountants shall make certificates of the adjustment they make showing a fully itemized statement of the debits and credits, and file one each with the chairman of the board of commissioners of each of the counties of Shoshone and Nez Perce, and whatever amount is shown by such certificates to be due from either one of the counties to the other, the board of commissioners of the proper county shall cause warrants to be drawn by the auditor of their county in favor of the other of the amount due, at their first regular session after the filing of the accountants' certificate, as aforesaid; provided, that in fixing values on Shoshone county property no value shall be placed upon the roads and bridges within said county; provided further, that if said accountants cannot agree as to the value of the county property, as herein stated, the governor of the state of Idaho shall appoint one disinterested person, who must be a resident of some other county, who shall fix and determine the value of said property, and make out and file certificates accordingly, with the chairman of the boards of county commissioners of

Shoshone and Nez Perce counties." Said act provides that the question of attaching a portion of Shoshone county to Nez Perce county should be submitted to the electors of that portion of Shoshone county to be cut off, at the general election held in November, 1904, which was done, and on the nineteenth day of November, 1904, the votes on that question were canvassed and said question declared to have been carried. Thereafter the accountants referred to in said section 4 were duly appointed and met at the county seat of Shoshone county, and took the required oath and entered upon the performance of the duties prescribed by the provisions of said section.

It is alleged in the petition that said accountants agreed upon all matters and things connected with said accounting and that defendant refused to sign the required certificate. The answer of the defendant denies that the said accountants came to any agreement, and sets forth several reasons why the accountant appointed for Nez Perce county refused to sign the certificate provided for in said act.

It is unnecessary for us to go further into the pleadings and the issues made by them, as counsel for the respective counties substantially agree that the questions which confronted the accountants in making their apportionments of Shoshone county's indebtedness, and on which they finally differed, fall under several different heads. Counsel for plaintiff discusses them under eight different heads as follows: "1. Should the accountants take into consideration the assessed value of lands of the Clearwater Timber Company as they appear on the assessment-rolls in determining the assessed valuation of Shoshone county? 2. Should the accountants have chosen May 8, 1903 (sixty days after the close of the session of the legislature, which passed the act in question), or November 19, 1904 (the day upon which the canvassing board of Shoshone county declared the result of the election to the governor) as the day for computing the indebtedness of said county and the moneys in the treasury? 3. Should the accountants deduct from the indebtedness of Shoshone county, the value of the tax deeds, tax sale certifi-

cates and delinquent taxes owned by it before apportioning said indebtedness between said counties, or should they simply deduct the value of the courthouse, jail, fixtures and personal property of like nature?    4. Should the moneys in the treasury of Shoshone county, on the date said act took effect, be deducted from said county's indebtedness before such indebtedness is apportioned?    5. Do the tax sale certificates, tax deeds and delinquent taxes, affecting the property in the annexed district, belong to Shoshone county or to Nez Perce county?    6. Do the moneys collected by Shoshone county since November 19, 1904, from taxpayers in the annexed district for county and state tax, belong to Shoshone county or to Nez Perce county?    7. Do the school moneys not distributed prior to the date of annexation, which would have been apportioned to school districts in said annexed portion, had the county not been divided, belong to Shoshone county or to Nez Perce county?    8. Is all of Nez Perce county or only the annexed district liable to Shoshone county for the ratable portion of Shoshone county's indebtedness?''

As to the first question submitted, it appears from the record before us that certain lands had been assessed to the Clearwater Timber Company, the title to which, it is contended, was in the United States and therefore not subject to taxation.    The accountant for Nez Perce county took the position that the assessed valuation of said land should not be taken into consideration in arriving at the value of the taxable property of said Shoshone county, while the accountant for Shoshone county took the position that the legislature having fixed the assessment-roll as the basis of valuation for said property, the accountants had no authority to make any changes therein but must take the valuation as given by such assessment-roll.    The question then presented is whether said accountants, under the provisions of said act, had any authority to deduct from said assessment-roll the value of any property which they supposed to have been illegally assessed. The provisions of said section 4 bearing directly on said point are as follows: ''And to apportion said indebtedness *pro rata* between the counties of Shoshone and Nez Perce according

to the taxable property that the territory annexed bears to the whole as now organized under the provisions of said act should the same take effect; basis and valuation of property to be taken and computed from the assessment-roll and the books of the present Shoshone county made for the year next preceding such election.'' The question arises, Did the legislature by those provisions intend to make said assessment-roll the basis of valuation for such property, or was it the intention that the accountants should go over such assessment-roll and deduct therefrom the valuation of all property deemed by them to be not taxable? It is conceded that the legislature had the power to direct how and in what manner such indebtedness should be apportioned, but the question here is as to what was the intention of the legislature, as expressed in the section above quoted. We think it clear the intention was that said accountants must take said assessment-roll as the basis of such valuation and that they have no authority to add to or take from the valuation of the taxable property as found therein. We answer the first question, then, by saying that the accountants in arriving at the assessed valuation of Shoshone county must take into consideration the taxable property as shown by said assessment-roll and the valuation therein contained.

If the lands of the Clearwater Timber Company have been illegally assessed, that is not a question to be determined by the said accountants. Whether the assessment-roll contains illegal assessments is no matter of concern to said accountants in the discharge of their duties under said act.

We have examined the authorities cited by counsel for defendant on the point under consideration, and, notwithstanding the decision of the *Board of Commissioners of Custer County v. Board of Commissioners of Yellowstone County,* 6 Mont. 36, 9 Pac. 586, we have arrived at the conclusion above stated.

It would appear from the second question submitted that the accountants could not agree upon the date from which the indebtedness of Shoshone county must be computed—whether it be May 8, 1903 (that date being sixty days after the close

of the session of the legislature which passed the act in question), or November 19, 1904 (the day upon which the canvassing board of Shoshone county certified the result of the election to the governor).

Said section 4 provides, among other things, that said commissioners (accountants) must ascertain the whole amount of the indebtedness of said Shoshone county "at the date that this act takes effect." Said act does not contain the emergency clause, and under the provisions of section 22, article 3 of the constitution, it became a law sixty days after the adjournment of the legislature, or on May 8, 1903. It became a law on that date but did not go into full operation until November 19, 1904, the date when the result of said election was certified to the governor. The accountants must ascertain the indebtedness of Shoshone county on November 19, 1904, as the act went into full effect and operation on that day.

The third question submitted is as to the meaning of the term "county property" as used in said act. Said section provides, *inter alia:* "Said commissioners shall apportion the value of said county property of Shoshone county upon said basis as is provided for the apportionment of the indebtedness of Shoshone county, and said accountants shall, in adjusting said indebtedness of the said county property, allow Shoshone county to retain all county property, such as courthouses, furniture and fixtures, but the said Nez Perce (Shoshone) county must give Shoshone (Nez Perce) county credit in the adjustment of the accounts for the annexed territory's apportionment of the value of said courthouse and other county property." It further provides "that in fixing values on Shoshone county property, no value shall be placed on the roads and bridges within said county." The question arose between the accountants whether the tax sale certificates and tax deeds and delinquent taxes due Shoshone county was county property within the meaning of that term for which Shoshone county must account. We think that the term "county property" as used in said act is broad enough to include property acquired by tax deeds and the value of

tax certificates owned by the county, but would not include delinquent taxes due Shoshone county. The value of such county property must be ascertained as directed by said act. If the county holds any property that is valueless, of course no value should be put upon it. And if it holds a tax certificate covering property that has been destroyed or become valueless, it should not be assessed as of any value. The act particularly provides that in fixing values on Shoshone county property no value shall be placed upon roads and bridges, thus indicating that all county property except roads and bridges must be taken into consideration. As to the delinquent taxes, much of which may have become absolutely uncollectible by reason of the property assessed having become valueless or having been removed from the state, or the removal of the persons to whom it was assessed from the state, we conclude that the term "county property" as used in that act does not include delinquent taxes. Said act particularly provides that in fixing values on Shoshone county property no value shall be placed upon roads and bridges, thus indicating that all county property but that especially excepted should be taken into consideration and valued.

The fourth question submitted is: Should the moneys in the treasury of Shoshone county on the date the act took effect be deducted from Shoshone county's indebtedness before such indebtedness is apportioned?

Section 5 of said act provides as follows: "Said accountants, provided for in section 4 of this act, shall, in accordance with their duties already described, ascertain and apportion all moneys in the county treasury at the time this act takes effect as shown by the books in the auditor's and treasurer's offices of Shoshone county between the county of Shoshone and Nez Perce in the same ratio and upon the same basis as the indebtedness and county property is to be apportioned as provided in section 4 of this act." It is clear under the provisions of said sections 4 and 5 that the money in the treasury of Shoshone county at the time the act became operative is to be divided between said counties in the same ratio as county property and county indebtedness are divided, and

is not to be deducted from the total indebtedness of said county before the apportionment of such indebtedness. If it be first deducted from the total indebtedness and thereafter apportioned and a part paid over to Nez Perce county, that county would get a double benefit therefrom. Our answer to the fourth question is—No.

The fifth question submitted is: "Do the tax sale certificates and tax deeds and the delinquent taxes affecting property in the annexed portion belong to Shoshone county or Nez Perce county and who should collect such delinquent taxes?" The answer to the fourth question disposes of that part of the fifth question so far as tax sale certificates and tax deeds are concerned. They belong to Shoshone county and are "county property." The delinquent taxes belong to Shoshone county and it has authority to collect them, but they are not such county property as must be valued and apportioned; whatever may be realized from them belongs absolutely to Shoshone county. On the collection of such delinquent taxes, see *In re Fremont County,* 8 Wyo. 1, 54 Pac. 973; 7 Am. & Eng. Ency. of Law, 913, and cases cited; Cooley on Taxation, 3d ed., 414, 415, and cases cited; *Commissioners of Laramie Co. v. Commissioners of Albany Co.,* 92 U. S. 307, 23 L. ed. 552; Dillon on Municipal Corporations, 4th ed., sec. 188; *Mount Pleasant v. Beckwith,* 100 U. S. 514, 25 L. ed. 699.

The sixth question is as to whether the moneys collected for county and state purposes from taxpayers in the annexed district since November 19, 1904, belong to Shoshone or Nez Perce county. They belong to Shoshone county. The act providing for the division of that county provides for an apportionment of money in the treasury when said act goes into effect and not after that date. On this question see authorities cited above, and also *Colusa County v. Glenn Co.,* 117 Cal. 434, 49 Pac. 457.

The seventh question submitted is: Do the school moneys not distributed prior to said act becoming operative and which would have belonged to school districts in the territory annexed had there been no annexation belong to Sho-

shone county or Nez Perce county? The act in question makes no provision for the transfer of such school moneys to Nez Perce county, and we think it clear that all school moneys not apportioned at the date said law went into effect belong to Shoshone county and must be prorated as other money in the treasury of said county. (See *Cooke v. School District,* 12 Colo. 453, 21 Pac. 469.) But any school moneys in the hands of the treasurer that have been raised by a special tax in any of the annexed districts belong to the district raising it.

The eighth and last question propounded was: "Is all of Nez Perce county or only the annexed portion thereof liable to Shoshone county for Nez Perce's *pro rata* share of Shoshone county's indebtedness?" We do not deem it necessary or proper at this time to answer said question, as that is a question that concerns particularly the annexed portion of Shoshone county and Nez Perce county and not Shoshone county. When that question is presented the people living in the annexed portion have the right to be heard as well as Nez Perce county.

It is contended by counsel for the defendant under the provisions of said act, if in the final adjustment of this matter it is ascertained that any balance is due to Shoshone county, the board of county commissioners of Nez Perce county shall cause warrants to be drawn by the auditor of their county in favor of Shoshone county in payment of said balance, and that such warrants should be drawn upon a special fund to be raised by taxation from the annexed portion of Shoshone county, while it is contended by the attorney for the plaintiff that such warrants must be drawn on the general fund of Nez Perce county. That part of said section referring to said matter is as follows: "Said accountants shall make certificates of the adjustment they make showing a fully itemized statement of the debits and credits, and file one each with the chairman of the board of commissioners of each of the counties of Shoshone and Nez Perce, and whatever amount is shown by such certificates to be due from either one of the counties to the other, the board of commis-

sioners of the proper county shall cause warrants to be drawn by the auditor of their county in favor of the other for the amount due, at the first regular session after the filing of the accountants' certificate, as aforesaid." We think the intention was that such indebtedness should be settled by warrants drawn by the debtor county upon the general fund of such county, and so hold. We therefore hold that Nez Perce county must issue its warrants to Shoshone county for its *pro rata* share of said indebtedness.

The writ of mandate must issue to defendant requiring him to proceed in accordance with the views herein expressed and perform the duties required to be performed by him under the provisions of the act under consideration and to make his certificate as provided for therein. Each party must pay their own costs of this proceeding.

Stockslager, C. J., and Ailshie, J., concur.